PEOPLE v NGUYEN

Docket No. 312319. Submitted February 12, 2014, at Detroit. Decided
    June 24, 2014, at 9:15 a.m. Leave to appeal sought.

Thanh Manh Nguyen was charged in the 52-4 District Court with
    possession with intent to deliver 50 to 449 grams of cocaine after
    cocaine was discovered in his pocket during a search following a
    traffic stop of his vehicle. The traffic stop was conducted after a
    confidential informant (CI) cooperating with federal agents had
    agreed to purchase a large quantity of cocaine from defendant and
    it appeared that defendant had obtained the cocaine and was
    driving to meet the CI at a prearranged location in Troy. He was
    also charged with 16 counts related to drugs, weapons, and
    contraband discovered in his home during a search pursuant to a
    warrant conducted following the traffic stop. The court, Kirsten
    Nielsen Hartig, J., suppressed the evidence of the cocaine found in
    defendant's pocket and dismissed the count relating thereto on the
    basis that the police had no probable cause to arrest defendant.
    The court then dismissed the remaining counts, concluding that,
    absent evidence of the cocaine found in defendant's pocket and his
    statements to the police at that time, there was no probable cause
    to support the issuance of the search warrant for the home. The
    prosecution appealed. The Oakland Circuit Court, James M.
    Alexander, J., determined that there was probable cause to arrest
    defendant, reversed the district court's suppression of the evidence
    of the cocaine found in defendant's pocket, and reversed the
    dismissal of the charges against defendant. The circuit court then
    remanded the matter to the district court for further proceedings.
    On remand, the district court reinstated the charges and bound
    defendant over to the circuit court on the charges. The circuit
    court, Nanci J. Grant, J., accepted defendant's conditional plea of
    guilty with regard to all 17 counts, entered a judgment convicting
    defendant of the charges, and sentenced defendant as a fourth-
    offense habitual offender. The Court of Appeals granted defen-
    dant's application for leave to appeal.

The Court of Appeals held:

1. An officer making an arrest without a warrant may rely on
information received through an informant as long as the infor-

mant's statement is reasonably corroborated by other matters within the officer's knowledge. An informant's veracity, reliability, and basis of knowledge are all highly relevant in determining the value of the informant's report and can be used to determine whether probable cause exists. The existence of probable cause is determined by the totality of the circumstances.

2. The testimony at the preliminary examination showed that the CI was credible and reliable. The information the CI provided was highly relevant to establishing probable cause to believe that defendant possessed a large quantity of cocaine. Because the federal agents and the Troy police officers reasonably corroborated the information provided by the CI, the police properly relied on this information in making an arrest without a warrant. Probable cause to arrest defendant existed at the time his vehicle was initially stopped. The collective information known by the federal agents and the police officers before defendant's arrest would have justified the belief of a fair-minded person of average intelligence that defendant possessed a substantial amount of cocaine. The police had probable cause to lawfully arrest defendant.

3. The evidence supports the circuit court's conclusion that probable cause to arrest defendant did not dissipate despite the fact that cocaine was not found on defendant during an initial pat-down search for weapons and a subsequent consensual search of defendant's vehicle. Given the credible and corroborated information from the CI that defendant possessed cocaine, that cocaine was not discovered during the pat-down search for weapons or the search of the vehicle, and that defendant may have disregarded a police officer's order to stop his vehicle in order to take time to hide the cocaine in his pocket, the circuit court did not err by finding that probable cause for the arrest continued to exist during the second search of defendant when the cocaine was discovered in his pocket.

4. Because the arrest was lawful, the search incident to the arrest, which revealed the cocaine in defendant's pocket, was also lawful. A search incident to an arrest may still be valid if the arrest has not been made at the time the search is conducted and the arrest follows quickly on the heels of the search. The search may occur immediately before the arrest, at the place of the arrest, or at the place of detention, and may occur before the defendant is advised of his or her right to post bail. Because a search incident to an arrest may occur whenever there is probable cause to arrest, even if the arrest has not been made at the time the search is conducted, the police were not required to arrest defendant before conducting the search incident to his arrest. Additionally, because

probable cause existed to arrest defendant, the need to preserve evidence for later use at trial still existed even though the search was conducted before the arrest.

5. Because the facts and circumstances were sufficient to warrant a prudent individual to believe that defendant had committed an offense, the district court's conclusion regarding the subjective beliefs of the police officers with regard to whether probable cause existed at the time of the search that revealed the cocaine is not determinative of the outcome in this case. Regardless of the subjective beliefs of police officers during a traffic stop, probable cause to justify an arrest is examined under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved.

6. Because the police had probable cause to arrest defendant, the police did not need any additional justification to conduct the search incident to the arrest. The intervening pat-down search for weapons and consensual search of the vehicle did not negate the facts that probable cause to arrest defendant existed at the time of the initial stop and the police could have arrested him at any point.

Affirmed.

1. CRIMINAL LAW — ARRESTS WITHOUT WARRANTS — INFORMANT TIPS — PROBABLE CAUSE.

A police officer making an arrest without a warrant may rely on information received through an informant as long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge; the existence of probable cause based on informant tips is determined by the totality of the circumstances.

2. CRIMINAL LAW — ARRESTS WITHOUT WARRANTS — PROBABLE CAUSE — COLLECTIVE-KNOWLEDGE APPROACH.

The Court of Appeals recognizes the collective-knowledge approach that allows numerous law enforcement agents to possess different information that, in its totality, establishes probable cause to believe that an offense has occurred and that the defendant committed the offense.

3. CRIMINAL LAW — ARRESTS WITHOUT WARRANTS — SEARCHES INCIDENT TO AN ARREST.

A search incident to an arrest is an exception to the warrant requirement and may occur whenever there is probable cause to arrest; a search incident to an arrest may still be valid if the arrest has not been made at the time the search is conducted and the

> arrest follows quickly on the heels of the search; the police do not
> need an additional justification to conduct a search incident to an
> arrest when the police have probable cause for the arrest.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Jessica R. Cooper*, Prosecuting Attorney, *Thomas R. Grden*, Chief, Appellate Division, and *Marilyn J. Day*, Assistant Prosecuting Attorney, for the people.

*Arnone Law Offices, PLLC* (by *Joseph R. Arnone*), for defendant.

Before: O'CONNELL, P.J., and WILDER and METER, JJ.

WILDER, J. Defendant appeals by leave granted[1] his convictions, following a conditional plea of guilty, of possession with intent to deliver 50 to 449 grams of cocaine, MCL 333.7401(2)(a)(*iii*), possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), possession of ecstasy, MCL 333.7403(2)(b)(*i*), manufacturing 5 to 44 kilograms of marijuana, MCL 333.7401(2)(d)(*ii*), possession of a firearm by a felon, MCL 750.224f, possession with intent to deliver less than 5 kilograms of marijuana, MCL 333.7401(2)(d)(*iii*), possession of less than 25 grams of oxycodone, MCL 333.7403(2)(a)(*v*), fraudulent use of a public utility over $500, MCL 750.282(1) and (2), possession of dihydrocodeine, MCL 333.7403(2)(b)(*ii*), possession of psilocin, MCL 333.7403(2)(c), and seven counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 11 to 30 years' imprisonment for the convictions of possession with intent to deliver 50 to

---

[1] *People v Nguyen*, unpublished order of the Court of Appeals, entered November 21, 2012 (Docket No. 312319).

449 grams of cocaine, possession with intent to deliver less than 50 grams of cocaine, possession of Ecstasy, manufacturing 5 to 44 kilograms of marijuana, and possession of a firearm by a felon. In addition, he was sentenced to 11 to 15 years' imprisonment for the convictions of possession with intent to deliver marijuana, possession of less than 25 grams of oxycodone, fraudulent use of a public utility over $500, and possession of dihydrocodeine. Finally, he was sentenced to two days' imprisonment for his conviction of possession of psilocin and two years' imprisonment for each of the seven felony-firearm convictions. We affirm.

I

This appeal arises from a traffic stop of defendant's vehicle on September 7, 2010, in the city of Troy. The record establishes that a confidential informant (CI), who was cooperating with United States Immigration and Customs Enforcement (ICE), had agreed to purchase a large quantity of cocaine from defendant in the city of Troy. With prior knowledge of the CI's agreement, the Troy police stopped defendant's vehicle, asked defendant to get out of the vehicle, and thereafter performed a pat-down search for weapons and a consensual vehicle search. Officer Neil Piltz searched the driver's compartment, underneath the seats, the top of the seats, and behind the driver's seat. Officer Piltz then talked to defendant while another officer conducted a search using a canine. No drugs were located in the vehicle during this initial search.

Throughout his conversation with Officer Piltz, defendant had his hands in his pants pockets. Officer Piltz testified at the preliminary examination that when defendant removed his hands from his pockets, he noticed a bulge in defendant's right pants pocket—

bigger than a golf ball—where it had been smooth during the initial pat-down. Officer Piltz felt the bulge and asked defendant what it was while he began to check inside defendant's pocket. Defendant then put his hands together in front of his body and told the officer that he should arrest him. Officer Piltz asked defendant why, to which defendant responded, "for what you're going to find in my pocket." Officer Piltz pulled out a felt bag and before he could look inside, defendant stated that it contained cocaine. Officer Piltz then arrested defendant.

Approximately 20 minutes lapsed from the time defendant was pulled over to the time Officer Piltz found the cocaine and arrested defendant. Later and contemporaneous with his arrest, defendant waived his *Miranda*[2] rights and admitted operating an illegal marijuana growing operation in his home and possessing firearms and other illicit controlled substances. The Troy police relied on defendant's statements and the cocaine found at the time of the arrest to obtain a search warrant for his home. When the search warrant was executed at defendant's home, various illegal drugs, firearms, and other contraband were recovered.

II

Defendant was charged with 17 counts in total. Count I (possession with intent to deliver 50 to 449 grams of cocaine) was based on the recovery of cocaine from defendant's pocket at the time of the arrest, and Counts II through XVII related to the drugs, weapons, and contraband found in his home. The district court began a preliminary examination and heard testimony and argument on four separate hearing dates, May 10,

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

2011, July 12, 2011, August 16, 2011, and October 11, 2011. At the May 10, 2011 hearing, Officer Piltz and Sergeant Scott Salter of the Troy Police Department testified regarding the events that occurred leading up to the arrest. After both officers testified, defense counsel moved for the suppression of the evidence of the cocaine found in defendant's pocket on the basis that the search was illegal. The district court ruled that the statements made by defendant to Officer Piltz, that he had cocaine in his pocket, were inadmissible because the officer violated defendant's *Miranda* rights. The district court also ruled that the police lacked probable cause for the arrest, citing a lack of testimony regarding what they knew about the CI and whether the information was reliable. In connection with its probable cause ruling, the district court stated: "It seemed quite obvious to me from the tape that both officers believed that they had come up empty and that there was nothing to arrest the defendant for until he sees the bulge, goes in and takes it." Following this ruling, in response to the prosecution's request, the district court set aside its finding that the police had lacked probable cause and permitted the prosecution to reopen the proofs in order to present testimony from ICE agents regarding whether the police had probable cause for the arrest.

At the July 12, 2011 hearing, ICE agents Brian Helmerson and Julia Harris testified regarding the information they received from the CI and the surveillance conducted on defendant. Agent Helmerson testified that the CI had been used previously as a CI in three ICE investigations. On the prior occasions, the CI had identified individuals involved in narcotics trafficking and then arranged meetings to conduct controlled-substance transactions. According to Agent Helmerson, the CI's information resulted in the seizure of controlled substances, seven arrests, and five convictions.

Two weeks before defendant's arrest, Agent Helmerson contacted Sergeant Salter at the Troy Police Department and informed him of the CI's agreement to buy cocaine from defendant in the city of Troy. Agent Helmerson informed Sergeant Salter that the information was from a reliable and credible source.

Throughout the day leading up to defendant's arrest, ICE agents heard the CI talking on the phone with defendant, who allegedly told the CI he was going to retrieve the cocaine after work and deliver it to the CI in the city of Troy. A surveillance team then saw defendant leave his work location and approach a house in a southwest Detroit location considered to be in a high-intensity drug-trafficking area. After defendant had arrived in southwestern Detroit, the CI received a communication from defendant indicating that he was in possession of the cocaine. Defendant then drove toward the specific Troy location at which defendant and the CI had agreed to meet.

When defendant was seen driving toward the city of Troy, Agent Helmerson contacted Sergeant Salter to turn over surveillance of defendant to the Troy Police Department. Agent Helmerson told Sergeant Salter the specific time that defendant's vehicle would enter the city and provided a photograph of defendant. Sergeant Salter observed a vehicle matching the description and displaying the license plate number of defendant's vehicle, which was moving in the direction that Sergeant Salter had been told defendant's vehicle would be traveling, and relayed this information to Officer Piltz, who also saw defendant's vehicle traveling in that specific direction. Officer Piltz then conducted the traffic stop.[3]

---

[3] Officer Piltz had previously testified during the May 10, 2011 hearing that he initiated a traffic stop of defendant's vehicle and used his

At the conclusion of the July 12, 2011 hearing defendant filed a motion to suppress evidence of the cocaine found in his pocket, claiming it was the fruit of an unlawful search. Defendant also moved to suppress his statements made to the police after the arrest as fruits of an unlawful arrest. At the August 16, 2011 hearing on the motion to suppress, the district court found:

> The defendant's stop was reasonable. His frisk was reasonable under Terry.[4] The search of his car was reasonable because I think at the moment he was stopped, based on the case law and the, the previous use of the informant and the informant having information that the defendant had the cocaine on his person.
>
> At the moment of the stop I agree with the prosecution that they didn't need his consent to, to search his car. That they could have arrested him for probable cause for being in possession of narcotics with intent to distribute. And search the car and have searched him.

Further, the district court articulated that, because the police found no contraband after they frisked defendant and searched his vehicle, a reasonable person would not have concluded that the confidential informant was correct. The district court held:

> [E]verything that occurred post this stop and before the moment of the second search, which in my opinion the search—the going into the pants was definitely a search. It was not Terry. It was without a search warrant. And the probable cause had absolutely dissipated by the time he went into the pants before the second search.

vehicle's public address system to instruct defendant to turn onto the next side street. Defendant did not stop at the next roadway, as instructed, but continued driving for about 500 feet and, at the same time, moved in the driver's seat as if he was "hiding something or moving something within the car."

⁴ *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

The district court suppressed evidence of the cocaine found in defendant's pocket on the basis that the police had no probable cause for the arrest, and it dismissed Count I (possession with intent to deliver 50 to 449 grams of cocaine).

At the October 11, 2011 hearing, the district court heard testimony focused on the remaining counts in order to determine whether defendant's statements to the police after he was arrested were fruits of an unlawful arrest. At this hearing Officer Scott Lamilza testified that he used defendant's statements from the interview following his arrest to obtain the search warrant for defendant's home. On the basis of this testimony, the district court suppressed defendant's statements as fruits of an unlawful arrest. The district court concluded that, absent evidence of the cocaine recovered from defendant's pocket and his statements, there was no probable cause to support the issuance of the search warrant for defendant's home. Accordingly, the district court dismissed the remaining Counts II through XVII.

The prosecution appealed the ruling in the circuit court. The circuit court concluded that, under the totality of the circumstances, "the information provided by the informant was sufficiently corroborated and supplemented by ICE Agents' and Troy Officers' investigation to warrant a finding of probable cause or 'a fair probability that contraband or evidence of a crime will be found in a particular place.' " (Citation omitted.) The circuit court further found that the probable cause did not dissipate as a result of Officer Piltz's failure to find cocaine during the pat-down and vehicle searches and that the police officers' failure to find the cocaine during the pat-down and vehicle searches did not constitute contrary facts supporting the dissipation of the

probable cause, but, rather, that these facts were supportive of the notion that the cocaine must be on defendant. The circuit court also concluded that it did not matter whether the police searched defendant before or after the lawful arrest. The circuit court reversed the district court's suppression of the cocaine evidence and dismissal of Count I. Further, the circuit court ruled that, because defendant's arrest was legal, the fruit of the poisonous tree doctrine did not apply to defendant's statements made to the police while in custody. The circuit court then remanded the matter to the district court for further proceedings. On remand, the district court reinstated the charges and defendant was bound over to the circuit court.

On July 12, 2012, defendant tendered a conditional plea of guilty regarding all 17 counts. Defendant preserved his right to challenge the circuit court's ruling.

III

On appeal, defendant contends that the circuit court erred by ruling that probable cause to arrest him existed at the time of the search, and even if probable cause did exist, it dissipated after the unsuccessful pat-down and vehicle searches. Further, defendant contends that because he was not arrested before the search and the police only arrested him after unlawfully recovering cocaine from his pants pocket, the search did not fall within the exception to the warrant requirement applicable to a search incident to an arrest. We disagree.

A

This Court reviews a trial court's factual findings in a suppression hearing for clear error. *People v Jenkins,*

472 Mich 26, 31; 691 NW2d 759 (2005), but "the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference; for this reason, we review de novo the trial court's ultimate ruling on the motion to suppress." *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005).

B

Both the United States and the Michigan Constitutions protect persons against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Bolduc*, 263 Mich App 430, 437; 688 NW2d 316 (2004). "The lawfulness of a search or seizure depends on its reasonableness." *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). A custodial arrest based on probable cause is not an unreasonable intrusion under the Fourth Amendment. *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996). An arresting officer, or collectively the officers involved in an investigation ("the police team" approach), must possess information demonstrating probable cause to believe that an offense has occurred and that the defendant has committed it. MCL 764.15; see *People v Dixon*, 392 Mich 691, 696-698; 222 NW2d 749 (1974); *People v Mackey*, 121 Mich App 748, 753-754; 329 NW2d 476 (1982); *United States v Perkins*, 994 F2d 1184 (CA 6, 1993).[5] In reviewing a claim that the police lacked probable cause to arrest, this Court must determine "whether facts available . . . at the moment of arrest would justify a fair-minded person of average intelligence in believing

---

[5] Although judicial decisions from foreign jurisdictions are not binding, we find this opinion from the United States Court of Appeals for the Sixth Circuit persuasive. *Hiner v Mojica*, 271 Mich App 604, 611-612; 722 NW2d 914 (2006).

that the suspected person had committed a felony." *People v Oliver*, 417 Mich 366, 374; 338 NW2d 167 (1983) (quotation marks and citation omitted). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." *People v Lyon*, 227 Mich App 599, 611; 577 NW2d 124 (1998). "Circumstantial evidence, coupled with those inferences arising therefrom, is sufficient to establish probable cause . . . ." *People v Northey*, 231 Mich App 568, 575; 591 NW2d 227 (1998).

Our Supreme Court, in *People v Levine*, 461 Mich 172, 183; 600 NW2d 622 (1999), recognized that Michigan caselaw is consistent with federal precedent regarding the existence of probable cause on the basis of informant tips. The existence of probable cause is determined by the totality of the circumstances. *Id.* at 185, citing *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). In making an arrest without a warrant, an officer " 'may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.' " *Gates*, 462 US at 242, quoting *Jones v United States*, 362 US 257, 269; 80 S Ct 725; 4 L Ed 2d 697 (1960), overruled on other grounds *United States v Salvucci*, 448 US 83, 85; 100 S Ct 2547; 65 L Ed 2d 619 (1980); see also *Levine*, 461 Mich at 182 (recognizing that an officer making an arrest without a warrant may rely on a tip, rather than direct observations, as long as the tip is reasonably corroborated by other matters within the officer's knowledge). An "informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report," and they can be used to determine whether probable cause exists. *Levine*, 461 Mich at 180, quoting *Gates*, 462 US at 230.

C

In the instant case, the testimony at the preliminary examination showed that the CI was credible and reliable. The CI had provided narcotics-trafficking information and arranged controlled-substances transactions in the past, resulting in seven arrests and five convictions. Accordingly, the information the CI provided about the arrangement to purchase cocaine from defendant was highly relevant to establishing probable cause to believe that defendant possessed a large quantity of cocaine. *Levine*, 461 Mich at 180, citing *Gates*, 462 US at 230. Furthermore, not only had the information provided by the CI been credible and reliable in the past, the information the CI provided about defendant was also reasonably corroborated by the observations of defendant made by both the ICE agents and the Troy police officers. After defendant allegedly reported to the CI by phone that he was going to retrieve the cocaine after work and deliver it to the CI in Troy, the surveillance team saw defendant drive from work, stop in a high-intensity drug-trafficking neighborhood, and then drive toward the specific location at which defendant and the CI had agreed to meet. In addition, the CI reported that defendant had confirmed his possession of the cocaine before he began driving toward Troy. Given that the ICE agents and the Troy police officers reasonably corroborated the information provided by the CI, the police properly relied on this information in making an arrest without a warrant. *Gates*, 462 US at 242; see also *Levine*, 461 Mich at 182.

On the basis of the testimony provided by the ICE agents and the Troy police officers, probable cause to arrest defendant existed at the time defendant's vehicle was initially stopped by Officer Piltz. The collective information known by the ICE agents and the Troy

police officers before defendant's arrest justified the belief by a fair-minded person of average intelligence that defendant had possession of a substantial amount of cocaine. At the time of defendant's arrest, the ICE agents and the Troy police were aware that defendant and the CI had engaged in communications and negotiations culminating in the CI's agreement to purchase a large quantity of cocaine from defendant at a specific location in Troy. The ICE agents corroborated the CI's statement that defendant would leave his place of business and obtain the cocaine when they saw defendant leave his work and go to a high-intensity drug-trafficking area in southwestern Detroit. The ICE agents further corroborated the CI's statement that defendant was going to drive to Troy to sell the cocaine he had obtained, when defendant communicated by phone with the CI that he had the cocaine in his possession and they saw defendant driving toward Troy. This information was relayed to the Troy police, who had a photograph of defendant, a description of his vehicle and its license plate number, and information regarding the direction in which defendant would be heading. The Troy police observed the vehicle that matched the description and license plate number heading in the direction indicated by the ICE agent. Furthermore, when Officer Piltz activated his emergency lights to initiate the traffic stop, defendant failed to follow the officer's instructions to pull off onto the next side road. Instead, he continued traveling for another 500 feet and Officer Piltz observed defendant moving around in the vehicle as though he was attempting to move or hide something. Because we recognize the collective-knowledge approach allowing numerous law enforcement agents to possess different information that, in its totality, establishes probable cause, the information possessed collectively by the ICE agents

and the Troy police officers was sufficient for a fair-minded person of average intelligence to believe that defendant had committed or was committing a crime. *Dixon*, 392 Mich at 696-698; *Mackey*, 121 Mich App at 753-754; *Perkins*, 994 F2d 1184. Therefore, the police had probable cause to lawfully arrest defendant.

D

Alternatively, defendant contends that, even if probable cause existed, it dissipated after the police performed a pat-down search for weapons and found no cocaine after searching his vehicle. Again, the district court's ruling that probable cause dissipated and the circuit court's holding that it did not are subject to review de novo. *Williams*, 472 Mich at 313. The district court relied on our Supreme Court's decision in *People v Russo*, 439 Mich 584; 487 NW2d 698 (1992). In *Russo*, the Court held:

> Once established, probable cause to arrest, which is concerned with historical facts, is likely to continue indefinitely, absent the discovery of contrary facts. By contrast, it cannot be assumed that evidence of a crime will remain indefinitely in a given place. Thus, "staleness" is not a separate doctrine in probable cause to search analysis. It is merely an aspect of the Fourth Amendment inquiry. [*Id*. at 605.]

Although the district court viewed the failure to find the cocaine during the initial pat-down for weapons and vehicle search as facts supporting the dissipation of probable cause, the circuit court held that these facts demonstrated that it was more probable that the cocaine was on defendant. The evidence supports the circuit court's conclusion that probable cause did not dissipate. The ICE agents and the police received information from a reliable and credible informant that

defendant possessed a substantial amount of cocaine. Defendant failed to stop his vehicle as ordered by Officer Piltz, and while he continued to drive, defendant made evasive movements indicating that he was moving or hiding something. The fact that cocaine was not found either during the pat-down search, which was geared toward searching for weapons, or the search of defendant's vehicle, did not lead to the dissipation of probable cause. Rather, given the credible and corroborated information from the CI that defendant possessed cocaine, that cocaine was not recovered during the pat-down search for weapons or the search of the vehicle, and that defendant may have disregarded the order to stop his vehicle to take time to hide the cocaine in his pocket, the circuit court did not err by finding that probable cause for the arrest continued to exist during the second search of defendant.

E

Having found the arrest to be lawful, we hold that the search incident to that arrest, which revealed the cocaine in defendant's pocket, was also lawful. Generally, a search conducted without a warrant is unreasonable unless it was conducted pursuant to an established exception to the warrant requirement. *Beuschlein*, 245 Mich App at 749. A search incident to an arrest is an exception to the warrant requirement, and may occur whenever there is probable cause to arrest. *People v LaBelle*, 478 Mich 891 (2007). There are two historical rationales for the "search incident to arrest" exception: "(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial." *Knowles v Iowa*, 525 US 113, 116; 119 S Ct 484; 142 L Ed 2d 492 (1998).

Defendant contends that this was not a proper search incident to an arrest because it occurred before the arrest. A search incident to an arrest may still be valid if the arrest has not been made at the time the search is conducted, *LaBelle*, 478 Mich at 891, and the arrest follows "quickly on the heels" of the search, *Rawlings v Kentucky*, 448 US 98, 111; 100 S Ct 2556; 65 L Ed 2d 633 (1980). The search may occur immediately before the arrest, at the place of arrest, or at the place of detention, and may occur before the defendant is advised of his or her right to post bail. *Champion*, 452 Mich at 115-116; *People v Crawford*, 202 Mich App 537, 538-539; 509 NW2d 519 (1993). In the instant case, after defendant was pulled over, Officer Piltz performed a pat-down search for weapons, and defendant consented to a vehicle search. After the police searched the vehicle, they searched defendant again and found cocaine in his pocket. Because a search incident to an arrest may occur whenever there is probable cause to arrest, even if the arrest has not been made at the time the search is conducted, the police were not required to arrest defendant before conducting the search incident to the arrest. *LaBelle*, 478 Mich at 891. Given that the police had probable cause to arrest defendant, the fact that defendant was searched immediately before his arrest does not make the search incident to the arrest invalid. Additionally, because probable cause existed to arrest defendant, the need to preserve evidence for later use at trial still existed even though the search was conducted before the arrest.

F

Defendant further asserts that no arrest was going to occur until after the police searched him the second time and, as a result, the principles regarding searches

incident to an arrest do not apply. In support of this argument, defendant asserts that the district court made factual findings that the officers did not believe that they had probable cause to arrest defendant at the time of the search. At the May 10, 2011 hearing, before the district court reopened proofs for evidence from the ICE agents, the district court stated, "It seemed quite obvious to me from the tape that both officers believed that they had come up empty and that there was nothing to arrest the defendant for until he sees the bulge, goes in and takes it." Regardless of the subjective beliefs of the police officers at the traffic stop, our Supreme Court has instructed us that the probable cause inquiry is "objective." *People v Cipriano*, 431 Mich 315, 342; 429 NW2d 781 (1988). The Court held:

> An arresting officer's subjective characterization of the circumstances surrounding an arrest does not determine its legality. Rather, probable cause to justify an arrest has always been examined under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved. [*Id.*]

Because the surrounding facts and circumstances were sufficient to warrant a prudent individual to believe that defendant had committed an offense, the district court's conclusion about the subjective beliefs of the police officers with regard to whether probable cause existed is not outcome-determinative here.

Defendant also contends that the stop was an investigatory stop and the initial pat-down was a justified *Terry* pat-down; however, after the officers conducted a consensual search of his vehicle, the second pat-down was no longer justified under *Terry*, thus making it an illegal search. Despite defendant's contention, this case does not rest upon "reasonable suspicion," as was the case in *Terry v Ohio*, 392 US 1, 26-27; 88 S Ct 1868; 20

L Ed 2d 889 (1968) (holding that when the officer has reasonable suspicion that the individual stopped for questioning is armed and thus poses a danger to the officer, the officer may perform a limited pat-down search for weapon). While it is true that a police officer may perform a limited pat-down search for weapons if the officer has reasonable suspicion that the individual is armed, *id.* at 27, the police, in the present case, had probable cause to arrest defendant when they initiated the stop. A *Terry* frisk must be justified by reasonable suspicion, while a search incident to an arrest needs no justification, as long as the underlying arrest is supported by probable cause. *People v Eaton*, 241 Mich App 459, 463; 617 NW2d 363 (2000), citing *United States v Robinson*, 414 US 218, 235; 94 S Ct 467; 38 L Ed 2d 427 (1973). Because the police had probable cause to arrest defendant, the police did not need any additional justification to conduct the search incident to the arrest. The intervening pat-down search for weapons and consensual search of the vehicle did not negate the facts that probable cause existed at the time of the initial stop and the police could have arrested defendant at any point.

IV

For the foregoing reasons, we conclude that the circuit court did not err by reversing the district court's suppression of the evidence regarding the cocaine. The police had probable cause to arrest defendant and the search incident to the lawful arrest was valid.

Affirmed.

O'CONNELL, P.J., and METER, J., concurred with WILDER, J.