# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KAREEM SALEH ALBARATI,

Defendant-Appellant.

UNPUBLISHED
February 27, 2018

No. 334169
Wayne Circuit Court
LC No. 14-000162-01-FH

Before: GLEICHER, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of possession with the intent to deliver morphine, MCL 333.7401(2)(a)(*iv*), possession with the intent to deliver amphetamine, MCL 333.7401(2)(b)(*ii*), felon in possession of a firearm (felon in possession), MCL 750.224f, carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony (felony firearm), third offense, MCL 750.227b. We affirm.

## I. BACKGROUND

On October 20, 2013, police received several anonymous tips that drugs were being sold out of a blue BMW parked outside of a donut shop in Hamtramck. Officer Janowicz was the first officer to arrive at the donut shop and observed a blue BMW parked, with the engine running, near a cement light pole. Officer Janowicz could not see inside the vehicle because the windows were darkly tinted, in apparent violation of the city's window-tinting ordinance. Officer Janowicz performed a license-plate search and discovered that the vehicle was registered to defendant and that defendant had two prior drug-related charges.

Officer Janowicz parked his patrol vehicle behind defendant's vehicle, blocking defendant's vehicle between the cement light pole and the patrol car. Officer Janowicz walked up to the driver's side door and knocked on the window. The window was rolled down only an inch, and defendant was seated in the driver's seat. Defendant was the only person in the vehicle. Officer Janowicz asked defendant to lower the car window all the way down; defendant refused and asked Officer Janowicz what he wanted. Officer Janowicz told defendant that he was dispatched to investigate a narcotics complaint and defendant denied doing anything with narcotics. Officer Janowicz asked defendant to step out of the vehicle, but defendant refused and

-1-

locked the vehicle's doors. Defendant said he was going to call his attorney, and held a phone up to his face.

Because defendant was not cooperating, Officer Janowicz radioed for assistance. Officer Bondra and Officer Wood arrived on the scene a short time later. Officer Janowicz asked defendant to step out of the car again, but defendant again refused. Officer Janowicz warned defendant multiple times that if he did not exit the vehicle, he would be arrested. Officer Bondra circled around the front passenger side of the vehicle to look into the front windshield because of the tinted side windows. Officer Bondra yelled to Officer Janowicz that he saw defendant reach underneath the driver's seat, and Officer Janowicz saw defendant lean forward. Officer Bondra became concerned for his safety, drew his gun, and pointed it at defendant. Officer Bondra could not see what defendant was reaching for, but testified that it was common in narcotics investigations for drugs and weapons to be placed under car seats to be concealed.

Also concerned for his safety, Officer Janowicz shattered the driver's side window with a baton and unlocked and opened the vehicle's door. Defendant finally stepped out of the vehicle. Officer Bondra placed defendant in handcuffs, patted defendant down for weapons, and placed defendant in Officer Bondra's patrol car. Officer Bondra and Officer Wood then took defendant to the police station. When defendant was booked, $4,350 was removed from his pockets.

After defendant was removed from the scene, Officer Janowicz performed an inventory search of defendant's vehicle. He found a handgun, loaded with nine rounds and one in the chamber, underneath the driver's seat. There was a bag of Watson-brand Vicodin pills underneath the driver's seat. Officer Janowicz found plastic sandwich bags on the front passenger seat, a "tally sheet" indicative of narcotic transactions in the cup holder, and two cell phones in the car. There was also a bag in the back seat of the vehicle containing bags of Adderall, amphetamine, and morphine. Prescription bottles with the labels removed were found in the back seat, as well as one bottle with a prescription label with defendant's name on it.

Defendant was issued two citations—one for his tinted windows, and another for obstructing the police while they were performing their duties—and charged with the above-mentioned crimes. Before trial, defendant moved to suppress evidence recovered from his vehicle as based upon a warrantless search of his vehicle in violation of his Fourth and Fourteenth Amendment rights. The prosecution responded that the anonymous tips, coupled with Officer Janowicz's observation of defendant's vehicle, the license-plate search, and defendant's tinted windows, gave Officer Janowicz reasonable suspicion to stop defendant. The prosecution further argued that defendant's threatening movements created probable cause to arrest defendant and subsequently search his vehicle. The trial court agreed with the prosecution and denied defendant's motion to suppress.

At trial, the prosecution moved to admit evidence of text messages recovered from the two phones discovered during the inventory search. Officer Janowicz testified that the text messages were removed from the phones pursuant to a search warrant and that the text messages proffered were the text messages he observed on the phones. Officer Janowicz did not know whether the cell phones were registered in defendant's name, but testified that they were recovered as part of the inventory search of defendant's vehicle. The trial court limited admission of the text messages to those purportedly related to drug activity, and the following

incoming text messages from the several days preceding defendant's arrest were read for the jury:

> "To get the script. I got to talk to you about some other shit, too, bro. It's real good money."

> "I just wanted to see if I could grab those scripts. Whenever you do have some time just let me know on this number, Remmo. It's not my number, but I'm always around the person who has it."

> "I got sixty Watsons."

> "Me and Kev want some Z's, and I still need a lot of the Z's."

> "Sixty Z's, twenty bars."

> "Can I get twenty V's and twenty S and I'll give you that. I'll give you twenty that I owe you and then I will give you the rest as soon as possible, ASAP."

> "[O]nly asking for thirty, which is $60 and owe 22, 220 total to you on Thursday, please."

> "I need Adderall."

> "Hey Remmo, do you have any blue footballs?"

> "Hey, good morning brother. How have you been? Was wondering if you ever get or have Dexedrine. It's like Adderall. Let me know."

The jury found defendant guilty of all five counts. Defendant was sentenced, as a third habitual offender, MCL 769.11, to concurrent prison terms of 85 months to 40 years for possession with the intent to deliver morphine; 85 months to 14 years for possession with the intent to deliver amphetamine; 6 to 10 years for felon in possession; and 4 to 7 years for carrying a concealed weapon. Those sentences were to be served consecutive to the statutorily mandated sentence of 10 years for felony firearm, third offense. MCL 750.227b(3). This appeal followed.

## II. ANALYSIS

A. <u>Search and Seizure</u>

On appeal, defendant first argues that the trial court erred when it denied his motion to suppress the evidence seized from his vehicle. This Court reviews a trial court's ruling at a suppression hearing de novo. *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003). This Court reviews the trial court's factual findings for clear error. *Id.* "A finding is clearly erroneous if, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id.*

Defendant's claim raises three issues: first, did reasonable suspicion justify Officer Janowicz's initial stop of defendant by blocking defendant's vehicle; second, did probable cause justify defendant's arrest; and, third, was the search of defendant's vehicle after his arrest valid. As explained below, we conclude that the trial court properly denied defendant's motion to suppress.

*Reasonable Suspicion Justified the* Terry *Stop.* The United States Constitution and the Michigan Constitution provide a right against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. When a search is conducted without a warrant, it is presumptively unreasonable, and therefore, unconstitutional. *People v Barbarich*, 291 Mich App 468, 472; 807 NW2d 56 (2011).

One exception to the warrant requirement, however, is for an investigatory stop, also known as a *Terry* stop. *Id*. at 473, citing *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Under this doctrine, "if a police officer has a reasonable, articulable suspicion to believe a person has committed or is committing a crime given the totality of the circumstances, the officer may briefly stop that person for further investigation." *Id*. In addition, police may approach and temporarily detain an individual to investigate possible criminal activity if there is no probable cause to arrest that individual. *Id*. "The scope of any search or seizure must be limited to that which is necessary to quickly confirm or dispel the officer's suspicion." *Id*.

To determine whether a defendant's Fourth Amendment rights were violated during an investigatory stop, this Court must consider whether the facts known to the responding officer "would warrant an officer of reasonable precaution to suspect possible criminal activity." *People v Steele*, 292 Mich App 308, 314; 806 NW2d 753 (2011). The totality of the circumstances must be viewed as they were understood by the officer, and deference must be given to the officer's training, experience, and "assessments of criminal modes and patterns." *Id*. at 315. "Fewer facts are necessary to support a finding of reasonableness when moving vehicles are involved than when a house or home is involved." *Id*.

When the circumstances involve an informant's tip, this Court "must examine whether the tipster's information contained sufficient indicia of reliability to provide law enforcement with a reasonable suspicion that would justify the stop." *Barbarich*, 291 Mich App at 474. This Court is to consider the following factors when assessing the reliability of a tip: " '(1) the reliability of the particular informant, (2) the nature of the particular information given to the police, and (3) the reasonability of the suspicion in light of the above factors.' " *Id*., quoting *People v Tooks*, 403 Mich 568, 577; 271 NW2d 503 (1978). "[I]nformation provided to law enforcement officers by concerned citizens is entitled to a finding of reliability when the information is sufficiently detailed and is corroborated within a reasonable period of time by the officers' own observations." *Tooks*, 403 Mich at 577.

The totality of the circumstances viewed in the light of the information that Officer Janowicz knew at the time he initiated the *Terry* stop demonstrates that he had a reasonable, articulable suspicion that a crime was committed or in progress. Officer Janowicz testified that there were several anonymous calls made about a blue BMW parked at the donut shot with possible narcotics trafficking occurring inside. When Officer Janowicz arrived at the donut shop there was a blue BMW parked in the parking lot, with its engine running. The corroboration of

the exact type of car in the exact location provided by the anonymous tip may provide reasonable suspicion that a crime was committed or being committed. See *People v Faucett*, 442 Mich 153, 168; 499 NW2d 764 (1993). Officer Janowicz ran the license-plate number and discovered that the vehicle was registered to defendant and that defendant had two prior drug charges. Moreover, defendant's windows were heavily tinted in violation of a city ordinance. *People v Davis*, 250 Mich App 357, 363; 649 NW2d 94 (2002). This information was sufficient to warrant a reasonable officer in Officer Janowicz's position in believing that criminal activity was present and to justify the *Terry* stop.

*Probable Cause Justified Defendant's Arrest.* Having concluded that the initial stop of defendant was justified, we must next determine whether officers had probable cause to arrest defendant. To arrest a person, the officer must have information establishing probable cause to believe that a crime has occurred and that the defendant committed it. *People v Nguyen*, 305 Mich App 740, 751; 854 NW2d 223 (2014). To determine whether police had probable cause to make an arrest, this Court determines whether the facts available at the time of the arrest would justify a "fair-minded person of average intelligence in believing that the suspected person had committed a felony." *Id.* at 751-752 (internal citation and quotation marks omitted). Only a probability or substantial chance of criminal activity is required to demonstrate probable cause, not an actual showing of criminal activity. *Id.* at 752. Circumstantial evidence and reasonable inferences arising therefrom are sufficient to demonstrate probable cause. *Id.* "The existence of probable cause is determined according to the totality of the circumstances." *Id.*

The totality of the circumstances demonstrates the officers had probable cause to arrest defendant. In performing a justified *Terry* stop of defendant, Officer Janowicz tapped on defendant's car window and asked defendant to roll his window completely down. Defendant refused. Officer Janowicz then asked defendant to exit the vehicle, which defendant also refused to do. Due to defendant's lack of cooperation, Officer Janowicz had to radio for backup. When Officer Bondra and Officer Wood arrived, Officer Janowicz continued to ask defendant to exit the vehicle, and warned him that he would be arrested for obstruction if he did not comply. Defendant still did not exit the vehicle.

Officer Bondra moved around the vehicle for a better view and saw defendant reaching beneath the seat for something. Defendant's lack of cooperation put the officers in fear of their safety, leading to Officer Janowicz shattering the window of defendant's vehicle and removing defendant from the vehicle. Considering the evidence that defendant refused to obey Officer Janowicz's commands and was observed making a threatening movement, a person of ordinary intelligence would be justified in believing that defendant was obstructing, opposing, or endangering the officers in performing a lawful *Terry* stop in violation of MCL 750.81d or MCL 750.479. Accordingly, there was probable cause for defendant's arrest without a warrant during the course of the investigatory stop. See also *People v Chapo*, 283 Mich App 360, 368; 770 NW2d 68 (2009) (holding that the defendant's refusal to exit the vehicle was probable cause for his arrest).

*The Inventory Search Following Defendant's Arrest Was Proper.* Finally, we must determine whether the inventory search of defendant's vehicle following his arrest was proper. The inventory exception to the warrant requirement for a search allows police to conduct an inventory search of a vehicle that is being impounded subsequent to a valid arrest of the driver.

*People v Toohey*, 438 Mich 265, 271-272; 475 NW2d 16 (1991). To be constitutional, an inventory search must be conducted according to police-department procedures and cannot be a pretext for a criminal investigation. *Id.* at 284.

Defendant does not assert that the inventory search failed to comply with departmental procedures. Officer Janowicz did not perform the inventory search until after defendant was arrested and taken to the police station by Officer Bondra. Because defendant's arrest was valid, the inventory search of defendant's vehicle was appropriate.

Thus, we conclude that the officers' stop, arrest, and search of defendant and his vehicle were justified under the Fourth and Fourteenth Amendments. Accordingly, the trial court properly denied defendant's motion to suppress.

B. <u>Admission of Evidence</u>

Next, defendant argues that the trial court erred when it admitted the text messages into evidence because they lacked a proper foundation and were more prejudicial than probative under MRE 403. A trial court's decision whether to admit or exclude evidence is not disturbed absent an abuse of discretion. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). An abuse of discretion occurs when the trial court's decision falls "outside the range of principled outcomes." *Id.* (internal citation and quotation marks omitted).

*The Text Messages Were Authenticated.* First, we address defendant's argument that the text messages were not authenticated. The proponent of evidence must authenticate the evidence before it can be admitted. *People v McDade*, 301 Mich App 343, 352; 836 NW2d 266 (2013). Authentication requires sufficient proof that the evidence is what the proponent claims it to be. MRE 901(a). Evidence may be authenticated by testimony of a witness with knowledge that the evidence is what it is claimed to be, or by content and distinctive characteristics that provide proper identification. MRE 901(b)(1), (4).

Before the prosecution moved to admit the text messages, Officer Janowicz testified that the cell phones containing the text messages were found in defendant's vehicle, in which defendant was the only occupant at the time of arrest. Defendant raised one of the phones to his ear during the encounter and the phones were seized as part of the inventory search subsequent to defendant's arrest. Police obtained a search warrant for the phones, and Officer Janowicz saw the messages while they were still on the phones. Officer Janowicz testified that the text messages read into evidence were the same text messages that he saw on the phones recovered from defendant's vehicle. Additionally, the text messages referenced some of the same types of drugs that were found in defendant's car, including Watson Vicodin and Adderall.

Although there was no testimony that the phones were registered under defendant's name, "proposed evidence need not tell the whole story of a case, nor need it be free of weakness or doubt." *People v Berkey*, 437 Mich 40, 52; 467 NW2d 6 (1991). The evidence only needs to meet the minimum requirements for admissibility, and it is up to the fact finder to weigh the evidence. *Id.* Here, the prosecution presented sufficient evidence that the phones were possessed by defendant in his vehicle for the purpose of authentication.

*The Text Messages Were Not Unfairly Prejudicial.* Next, we address defendant's argument that the text messages should have been excluded as unfairly prejudicial under MRE 403. Relevant evidence may be excluded under MRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "[U]nfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995) (internal citation and quotation notation omitted).

We conclude that the text messages were not unfairly prejudicial. The text messages were highly relevant to the intent-to-deliver element of defendant's convictions. The text messages not only referenced drug trafficking generally, but directly referenced some of the types of drugs found in defendant's possession. Contrary to defendant's assertion, that defendant's ownership of the phone was not established did not render the text messages speculative. The record showed that, even if defendant did not own the phones, the phones were in defendant's sole possession at the time of his arrest. Additionally, the trial court did not allow in all messages found on the phone but rather limited admission to the messages that arguably referenced drug-trafficking in the days leading up to defendant's arrest. To the extent that questions remained about defendant's knowledge or receipt of the text messages, under the circumstances, those questions better related to the weight of the evidence than its admissibility. The text messages were not unfairly prejudicial and exclusion was not warranted under MRE 403.

For the sake of completeness, we note that defendant characterizes the text messages as MRE 404(b) evidence. The evidence did not include any text messages defendant sent, but rather the text messages received on phones in defendant's possession. Accordingly, it would appear that the evidence shows the statements and acts of unnamed other persons, rather than those of defendant. Because the evidence was not offered to prove that those other persons acted in conformity with those prior statements or acts, the evidence does not appear to implicate MRE 404's exclusion of character-propensity evidence.

Moreover, even if the evidence can be characterized as MRE 404(b) evidence, defendant does not argue that the evidence was not offered for a proper MRE 404(b) purpose—in this case, to show defendant's intent to deliver the narcotics found in his possession. Rather, defendant argues that the evidence should have been excluded as unfairly prejudicial under MRE 403. Concluding that the evidence was not unfairly prejudicial, we find no error in the trial court's admission of the evidence. To the extent that defendant raises a concern that he was not given the pre-trial notice required under MRE 404(b)(2), we again note the questionable characterization of this evidence as MRE 404(b) evidence. In any event, defendant's concern amounts to a single sentence in his brief on appeal. Because this issue was not presented in the statement of questions involved for appeal and was only given cursory treatment in defendant's

brief, we decline to address it.[1]  MRE 7.212(C)(5); *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714, 724 (2009).

C.      Venue

Finally, defendant argues that the prosecution failed to prove venue beyond a reasonable doubt because it was not established that the address of the donut shop was located in Wayne County.  Because defendant did not raise his venue challenge below, we review it only for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Due process requires that criminal prosecutions be tried by a jury of the county where the crime was committed, unless otherwise provided by statute.  *People v Webbs*, 263 Mich App 531, 533; 689 NW2d 163 (2004).  The record leaves no question that the crimes at issue took place outside of a donut shop in Hamtramck.  Defendant does not challenge this fact, but argues that the prosecution did not present evidence that Hamtramck is in Wayne County.  We take judicial notice under MRE 201 that Hamtramck is located in Wayne County.  Wayne County Circuit Court was the proper venue for this case and defendant's claim is without merit.

Affirmed.


/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle

---

[1] Similarly, defendant does not properly raise a hearsay claim on appeal.  Defendant briefly mentions that the text messages were "inadmissible hearsay," but nowhere in his statement of questions presented does he mention hearsay, nor does he present argument or factual support for a hearsay claim.