# Court of Appeals, State of Michigan

## ORDER

People of MI v Eshay Le-Ann Banks

Docket No.     352478

LC No.         19-007242-01-FH

Jonathan Tukel
Presiding Judge

Deborah A. Servitto

Michelle M. Rick
Judges

The motion for reconsideration is DENIED.

The April 29, 2021 opinion is hereby VACATED, and a new opinion is attached.

_Presiding Judge_

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

June 17, 2021
Date

Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v

ESHAY LE-ANN BANKS,

       Defendant-Appellee.

UNPUBLISHED
June 17, 2021

No. 352478
Wayne Circuit Court
LC No. 19-007242-01-FH

Before: TUKEL, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

The prosecution appeals by leave granted[1] the trial court's order granting defendant's motion to dismiss the case. Defendant was charged with one count of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), and one count of possession with intent to deliver less than 50 grams of fentanyl, MCL 333.7401(2)(a)(*iv*). On appeal, the prosecution challenges the trial court's order granting defendant's motion to suppress the disputed evidence and dismiss the case because, the prosecution argues, the underlying strip search of defendant was permissible under the United States Constitution and Michigan state law. We agree and reverse.

## I. BACKGROUND

This case arises out of an August 15, 2019 traffic stop and arrest. Lincoln Park Police Officer Richard Walther testified that he noticed a vehicle with what appeared to be unlawfully "dark tinted windows." Officer Walther ran a check on the vehicle's license plate and discovered that the vehicle had been reported stolen. A traffic stop was initiated, and the unidentified driver was arrested. Defendant, who was seated in the front passenger seat, was advised to exit the vehicle. When Officer Walther ran a LEIN (Law Enforcement Information Network) check on defendant's name, he discovered that there was an outstanding warrant for her arrest. An

---

[1] See *People v Eshay Le-Ann Banks*, unpublished order of the Court of Appeals, entered April 17, 2020 (Docket No. 352478).

inspection of the vehicle's interior followed, revealing "a small glass tube that's commonly used to smoke crack cocaine" near the passenger door, and "small pieces" that "looked like suspected crack cocaine" in the center console of the vehicle. Defendant was subsequently placed under arrest and transported to the Lincoln Park Detention Center. At the Lincoln Park Detention Center, Detention Officer Barbara Militella conducted a strip search of defendant, during which Officer Militella observed a white object protruding from defendant's labia. Officer Militella asked defendant to remove it and defendant complied. According to Detective-Sergeant Scott Lavis, defendant was concealing "baggies" that were filled with crack cocaine, powder cocaine, and fentanyl.

Defendant filed a motion in the circuit court to suppress the disputed evidence and dismiss the case, claiming that for purposes of the Fourth Amendment of the United States Constitution, the underlying offense for which defendant was arrested was a misdemeanor, deeming the strip search unreasonable because Officer Militella, without probable cause, conducted an intrusive and unconstitutional body cavity search. Defendant further argued that under the circumstances that were presented, the officers lacked probable cause to perform a body cavity search, and that Officer Militella violated defendant's Fifth Amendment right against self-incrimination when she ordered defendant to remove the baggies. Finally, defendant argued that Officer Militella's warrantless strip search was improper because defendant had not been given her *Miranda*[2] rights before she was strip-searched. In response, the prosecution argued that the testimony established that the officers did not conduct a body cavity search, and given the circumstances of defendant's arrest, the strip search was valid because the officers had reason to suspect concealment of drugs or contraband. Therefore, the prosecution concluded, it was not improper for the district court to admit evidence that was obtained as a result of the strip search.

A hearing was held on defendant's motion to suppress the disputed evidence and dismiss the case. The trial court indicated it was not convinced that Officer Militella conducted a body cavity search because when defendant "did squat, there was something that was visible and that's what prompted [Officer Militella] to tell her – to ask her what it was." The trial court subsequently prompted the parties to address whether the strip search was appropriate, given that defendant was arrested for a misdemeanor. Defendant argued that the strip search was unlawful because the underlying offense for which defendant was arrested was for a misdemeanor that was unrelated to the evidence that was obtained as a result of the strip search. In response, the prosecution argued that the strip-search was permissible because there was probable cause to believe that defendant was concealing drugs or contraband on the basis that a crack pipe was discovered next to defendant's seat during the search of the vehicle.

The trial court ultimately granted defendant's motion to suppress the disputed evidence and dismissed the case, stating that "[i]t's a violation. It's an absolute violation of [defendant's] rights." The trial court did not explain its reasoning or provide any analysis addressing whether the evidence was obtained as a result of a search in violation of MCL 764.25a or whether a violation would necessarily result in the exclusion of the evidence.

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

On appeal, the prosecution argues that the trial court improperly granted defendant's motion to suppress the disputed evidence and dismissed the case because the strip search of defendant did not violate her constitutional right to be free from unlawful searches. We agree.

## II. STANDARD OF REVIEW

Constitutional questions are questions of law that are reviewed de novo. *People v Steele*, 283 Mich App 472, 487; 769 NW2d 256 (2009). A trial court's ruling on a motion to suppress and application of underlying law is reviewed de novo and its factual findings are reviewed for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Roberts*, 292 Mich App 492, 502; 808 NW2d 290 (2011) (quotation marks and citation omitted).

A trial court's decision on a motion to dismiss is reviewed for an abuse of discretion. *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005). An abuse of discretion occurs when the trial court's decision "falls outside the range of principled outcomes." *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012). However, this Court reviews de novo questions of law on which a dismissal is based. *Stone*, 269 Mich App at 242. Finally, this Court reviews de novo whether an exclusionary rule applies. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009).

## III. ANALYSIS

The United States and Michigan Constitutions guarantee the right to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. Absent a compelling reason to impose a different interpretation, the Michigan Constitution is construed to provide the same protection as that secured by the Fourth Amendment. *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011). "The lawfulness of a search or seizure depends on its reasonableness." *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). "As a general rule, searches conducted without a warrant are per se unreasonable under the Fourth Amendment unless the police conduct falls under one of the established exceptions to the warrant requirement." *Id.* "Among the recognized exceptions to the warrant requirement are exigent circumstance, searches incident to a lawful arrest, stop and frisk, consent, and plain view." *People v Brzezinski*, 243 Mich App 431, 433; 622 NW2d 528 (2000). "Each of these exceptions, while not requiring a warrant, requires reasonableness and probable cause." *Id.* at 434. "Probable cause to search exists when facts and circumstances warrant a reasonably prudent person to believe that a crime has been committed and that evidence sought will be found in a stated place. Whether probable cause exists depends on the information known to the officers at the time of the search." *Id.* at 433. "Probable cause is traditionally determined on the basis of the totality of the circumstances." *People v Kazmierczak*, 461 Mich 411, 423 n 11; 605 NW2d 667 (2000). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." *People v Nguyen*, 305 Mich App 740, 751-752; 854 NW2d 223 (2014) (cleaned up).

MCL 764.25a, Michigan's strip-search statute, provides, in relevant part:

(1) As used in this section, "strip search" means a search which requires a person to remove his or her clothing to expose underclothing, breasts, buttocks, or genitalia.

(2) A person arrested or detained for a misdemeanor offense, or an offense which is punishable only by a civil fine shall not be strip searched unless both of the following occur:

(a) The person arrested is being lodged into a detention facility by order of a court or there is reasonable cause to believe that the person is concealing a weapon, a controlled substance, or evidence of a crime.

(b) The strip search is conducted by a person who has obtained prior written authorization from the chief law enforcement officer of the law enforcement agency conducting the strip search, or from that officer's designee; or if the strip search is conducted upon a minor in a juvenile detention facility which is not operated by a law enforcement agency, the strip search is conducted by a person who has obtained prior written authorization from the chief administrative officer of that facility, or from that officer's designee.

We conclude that the warrantless strip search of defendant for other narcotics and drug paraphernalia upon her arrival at the detention center was justified. In this case, defendant was a passenger in a vehicle that was reported as stolen. Initially, defendant attempted to evade arrest by supplying the officers on the scene with a fictitious name. When the defendant finally provided the police with her real identity, the officers discovered that there was an outstanding warrant for her arrest. The police officers then arrested defendant. Thereafter, while searching the vehicle, the officers found a suspected crack pipe and suspected narcotics near the passenger door, where defendant was seated. The strip search was appropriate as defendant was then processed into the jail, by prior order of the court that authorized the bench warrant. Furthermore, based on the totality of the circumstances, there was "reasonable cause" to believe that defendant could be concealing a controlled substance on her person, given the circumstances surrounding her arrest. Finally, we note that, the record indicates that the search was authorized by Officer Militella's commanding officer and conducted by a female officer in a remote room where there were no cameras recording.

We conclude that the disputed search was a strip search, not a body cavity search. Notably, a strip search, is permitted upon admission to a jail for obvious reasons. Contraband can create harm within the facility and may not be readily discoverable during a pat-down search. In addition, a strip search was also appropriate given that it was reasonable to believe that defendant could be concealing controlled substances on her person, which would not have been discovered by normal observation or through a less-intrusive search. A "strip search" is "a search which requires a person to remove his or her clothing to expose underclothing, breasts, buttocks, or genitalia." MCL 764.25a(1). A "body cavity search" is "a physical intrusion into a body cavity for the purposes of discovering any object concealed in a body cavity." MCL 764.25b(1)(b). Specifically, "body cavity" is defined as "the interior of the human body not visible by normal observation, being the stomach or rectal cavity of a person and the vagina of a female person." MCL 764.25b(1)(a).

In this case, Officer Militella did not conduct an intrusive and unconstitutional body cavity search. Here, the testimony established that defendant did not have to reach "inside her vagina" to remove the baggies because they were protruding from her and were "in" her labia, not her vagina after she squatted and coughed. Officer Militella testified that she observed a white object, later revealed to be "baggies," protruding from defendant's labia during the strip search and that the object was "in plain sight" and "very visible," i.e., not fully concealed by defendant's body. Officer Militella testified that she asked defendant to remove the object and that defendant complied and placed the baggies into her hand. Officer Militella testified that defendant did not have to reach inside her vagina to remove the baggies because they were "in" her labia, not inside her vagina. On the basis of this evidence, Officer Militella did not physically intrude into defendant's body cavity while carrying out the search and, therefore, did not conduct a body cavity search.

Even if the officers conducted the strip search in violation of MCL 764.25a, a per se statutory violation does not necessarily implicate the exclusionary rule. "The exclusionary rule is a harsh remedy designed to sanction and deter police misconduct where it has resulted in a violation of constitutional rights," and "suppression of the evidence should be used only as a last resort." *People v Frazier*, 478 Mich 231, 247; 733 NW2d 713 (2007) (cleaned up). "Irrespective of the application of the exclusionary rule in the context of a *constitutional* violation, the drastic remedy of exclusion of evidence does not necessarily apply to a *statutory* violation. Whether the exclusionary rule should be applied to evidence seized in violation of a statute is purely a matter of legislative intent." *People v Hawkins*, 468 Mich 488, 500; 668 NW2d 602 (2003). Nonetheless, because we conclude that there was no statutory violation, we decline to determine whether or not the exclusionary rule applies to a per se violation of MCL 764.25a.

The evidence was also not required to be excluded under the United States and Michigan Constitutions. The United States Supreme Court has held that searches of pretrial detainees do not violate the Fourth Amendment. In *Bell v Wolfish*, 441 US 520, 558, 560; 99 S Ct 1861; 60 L Ed 2d 447 (1979), the United States Supreme Court concluded that visual body cavity searches of pretrial detainees following contact visits did not violate the Fourth Amendment. The Court noted that "[t]here must be a mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application. This principle applies equally to pretrial detainees and convicted prisoners. A detainee simply does not possess the full range of freedoms of an unincarcerated individual." *Id*. at 546 (quotation marks and citation omitted). The Court also recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id*. Further, "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v Bd of Chosen Freeholders of Co of Burlington*, 566 US 318, 328; 132 S Ct 1510; 182 L Ed 2d 566 (2012). "[D]eference must be given to the officials in charge of the jail unless there is 'substantial evidence' demonstrating their response to the situation is exaggerated." *Id*. at 330 (citation omitted). Additionally, this Court has also recognized that there are restrictions on a pretrial detainee's or prisoner's Fourth Amendment rights. *People v Phillips*, 219 Mich App 159, 162; 555 NW2d 742 (1996).

Accordingly, we conclude that the strip search did not violate defendant's Fourth Amendment rights and that the search was permissible under the United States and Michigan

Constitutions. The officers had a substantial and legitimate interest in preventing defendant, a detainee, from putting at risk the workers and other detainees at the detention center, and the officers likewise had an interest in preventing contraband from infiltrating the detention center. See *Florence*, 566 US at 333-334. Further, defendant has not provided substantial evidence demonstrating that the strip search or officers' actions were exaggerated.

Defendant also asserted in the trial court that the search violated her Fifth Amendment privilege against self-incrimination. The United States Supreme Court has held that the Fifth Amendment privilege against self-incrimination "protects an accused only from being compelled to testify against himself [or herself], or otherwise provide the State with evidence of a testimonial or communicative nature . . . ." *Schmerber v California*, 384 US 757, 761; 86 S Ct 1826; 16 L Ed 2d 908 (1966). However, the Fifth Amendment "is not concerned with nontestimonial evidence." *Oregon v Elstad*, 470 US 298, 304; 105 S Ct 1285; 84 L Ed 2d 222 (1985). "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States*, 487 US 201, 210; 108 S Ct 2341; 101 L Ed 2d 184 (1988). "[T]here is a significant difference between the use of compulsion to extort communications from a defendant and compelling a person to engage in conduct that may be incriminating." *United States v Hubbell*, 530 US 27, 34-35; 120 S Ct 2037; 147 L Ed 2d 24 (2000). Further, "even though the act may provide incriminating evidence, a criminal suspect may be compelled to put on a shirt, to provide a blood sample or handwriting exemplar, or to make a recording of his voice. The act of exhibiting such physical characteristics is not the same as a sworn communication by a witness that relates either express or implied assertions of fact or belief." *Id*. at 35 (cleaned up). Here, the act of defendant removing the baggies at the request of the searching officer during the strip search was nontestimonal in nature. Therefore, the Fifth Amendment was not applicable and there was no violation of that privilege.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ /Michelle M. Rick