*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARTEZ DICKERSON,

Defendant-Appellant.

UNPUBLISHED
March 28, 2019

No. 339787
Wayne Circuit Court
LC No. 17-001669-01-FH

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARK HARMON,

Defendant-Appellant.

No. 340674
Wayne Circuit Court
LC No. 17-001669-02-FH

Before: MURRAY, C.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

In these consolidated cases,[1] defendant, Martez Dickerson, appeals as of right his jury trial convictions of two counts of possession with intent to deliver less than 50 grams of a controlled substance, MCL 333.7401(2)(a)(*iv*), possession with intent to deliver marijuana, MCL 333.7401(2)(d)(*iii*), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Dickerson was sentenced to 2 to 20 years' imprisonment for each conviction of possession with intent to deliver less than 50 grams of a controlled substance, one

---

[1] *People v Dickerson*, unpublished order of the Court of Appeals, entered November 1, 2017 (Docket Nos. 339787, 340674).

to four years' imprisonment for his conviction of possession with intent to deliver marijuana, and two years' imprisonment for his felony-firearm conviction.

Defendant, Mark Harmon, appeals as of right his jury trial convictions of two counts of possession with intent to deliver less than 50 grams of a controlled substance, MCL 333.7401(2)(a)(*iv*), possession with intent to deliver marijuana, MCL 333.7401(2)(d)(*iii*), felon in possession of a firearm, MCL 750.224f, and felony-firearm, second offense, MCL 750.227b. Harmon was sentenced, as a fourth habitual offender, MCL 769.12, to 2 to 20 years' imprisonment for each count of possession with intent to deliver less than 50 grams of a controlled substance, and for his conviction of felon in possession of a firearm, 1 to 15 years' imprisonment for his possession with intent to deliver marijuana conviction, and five years' imprisonment for his felony-firearm conviction. We affirm the convictions of both defendants, but remand Harmon's case to the trial court for a ministerial correction of the judgment of sentence.

## I. FACTS

This case arises from defendants' possession of illegal drugs and firearms on February 3, 2017, in the lower flat of a two-story duplex located on Mt. Vernon Street in Detroit, Michigan. On that day, police conducted surveillance of the Mt. Vernon duplex at the request of Jacob De Golish, who claimed to be the owner of the duplex. De Golish had reported that although the duplex was supposed to be unoccupied, he suspected that the lower flat was being used for drug trafficking. De Golish provided the officers written consent to enter and search the duplex.

During their surveillance, the officers observed what appeared to be an illegal narcotics transaction at the front door of the lower flat. The officers used a police ram to enter the lower flat, after announcing "police." Upon entering the apartment, police saw Dickerson and Harmon; both defendants appeared to have just jumped up from a table containing guns and narcotics. Defendants ran to the rear of the apartment, up a rear stairwell, entered the upper unit of the duplex, and locked the upstairs door behind them. The officers pursued them, and ultimately forced entry through the front door of the upper unit. The officers found defendants hiding in a closet in a back bedroom of the upper unit, and arrested the two men. The officers then retrieved the narcotics and weapons from the table in the lower flat from which defendants had fled, including two handguns, 166 ziplock bags containing cocaine, 27 lottery ticket folds containing heroin, two knotted bags containing heroin, a sandwich-sized bag containing loose marijuana, 113 ziplock bags containing marijuana, and approximately $200 in cash.

De Golish testified that he purchased the Mt. Vernon Street duplex approximately two years earlier, and recorded the deed in his mother's name. His mother lives in California, however, and De Golish is the manager of the property. According to DeGolish, as of February 3, 2017, no one was authorized to occupy the duplex. De Golish testified that previously he had hired Arlene Emmons to work as a cleaning lady at some of his properties, and had given Emmons permission to stay in the upper flat of the Mt. Vernon duplex for a couple weeks. Although Emmons stayed in the upper flat for approximately five months, De Golish believed that Emmons had moved out of the upper flat one month before the police conducted the search. De Golish testified that when an employee informed him that drugs were being sold out of the duplex, he signed the consent form authorizing the police to search the duplex.

-2-

Prior to trial, Harmon filed a motion to suppress the evidence seized from the lower flat during the police search. At the hearing on the motion, Harmon testified that on the date of the raid, he was visiting Emmons's fiancé in the upper flat, and denied ever being in the lower flat. The trial court denied the motion to suppress, determining that Harmon lacked standing to challenge the search of the lower flat.

Harmon also filed a motion in limine to exclude evidence concerning the circumstances of his arrest, arguing that the consent, upon which the upstairs raid and subsequent arrest of Harmon were predicated, was invalid, that no warrant was obtained, and no exigent circumstances existed. Harmon contended that he had standing to challenge the search because he was an invited guest of Emmons in the upper flat when he was arrested. The trial court also denied this motion, finding that Harmon lacked permission to be in the upper flat and that Emmons was a holdover resident not entitled to occupy the flat. The trial court further found that exigent circumstances justified the police entering the upper flat. Harmon renewed this motion at trial, and Dickerson joined in the motion. The trial court denied the renewed motion to suppress, finding that De Golish was the owner of the duplex, or had authority from his mother to manage the property, and that the consent given to the police to search the duplex was valid.

Defendants were convicted and sentenced, and claimed appeals to this Court. Dickerson also filed in the trial court a motion for an evidentiary hearing and for a new trial, arguing that he had been denied the effective assistance of his trial counsel because trial counsel had failed before trial to move to suppress evidence seized in the search and had failed to attempt to call Emmons as a witness at trial. The trial court denied the motion for new trial and for a *Ginther*[2] hearing.

## II. DISCUSSION

## A. SUPPRESSION OF EVIDENCE

On appeal, Harmon argues that the trial court erred in denying his motions to suppress the evidence of the drugs, guns, and money found in the lower flat because the search of the lower flat and seizure of the evidence violated his Fourth Amendment right against unreasonable searches and seizures. We disagree.

In general, we review a trial court's decision regarding the admission of evidence for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). However, we review de novo a trial court's ultimate decision on a constitutional challenge seeking to suppress evidence. *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016). Any findings of fact made during a suppression hearing are reviewed for clear error. *Id*. A finding of fact is clearly erroneous if, after reviewing the entire record, we are left with a definite and firm conviction that a mistake has been made. *Id*.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

The United States and Michigan Constitutions provide protection from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. Whether a search or a seizure is lawful is determined by whether it is reasonable. *People v Nguyen*, 305 Mich App 740, 751; 854 NW2d 223 (2014). A search occurs within the meaning of the Fourth Amendment when the government intrudes on an individual's reasonable or justifiable expectation of privacy. *People v Antwine*, 293 Mich App 192, 195; 809 NW2d 439 (2011). Generally, searches conducted without a warrant, and without probable cause to believe that evidence of wrongdoing might be located at the place searched, are considered to be unreasonable, and the evidence seized as a result of an unreasonable search is subject to suppression at trial. *Mahdi*, 317 Mich App at 458.

To challenge a search and seizure by the police, however, the party challenging the search must have standing to do so. The right to be free from unreasonable searches and seizures cannot be invoked by a third party. *Mahdi*, 317 Mich App at 458-459. To possess standing to challenge a search, a person must have had a legitimate expectation of privacy in the place or location that is searched, and this expectation of privacy must be one that society recognizes as reasonable. *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). The defendant has the burden of establishing standing based upon the totality of the circumstances, including ownership, possession or control of the area searched or item seized, how the property has been used in the past, any subjective expectation of privacy, and the objective reasonableness of the expectation of privacy in light of the circumstances. *Mahdi*, 317 Mich App at 459.

In this case, the trial court correctly determined that Harmon lacked standing to challenge the search of the lower flat where the drugs and weapons were found. Harmon presented no evidence that he had a legitimate expectation of privacy in the lower flat. He testified that he had never been in the lower flat, and there is no evidence that Harmon had any right to enter the lower flat. Therefore, to the extent that Harmon challenged the search of the lower flat and the seizure of the contraband there, Harmon's claim fails for lack of standing.

Harmon also asserts that the trial court should have suppressed evidence concerning his arrest in the upper flat, where he was found hiding in a bedroom closet after he fled from the lower flat, as well as the fact that suspected narcotics were found in his jacket pocket after his arrest. We disagree. Harmon claimed that he was invited to the upper flat by Arlene Emmons or her fiancé, Leonard Anthony, who were allegedly living in the upper flat. There was ample testimony at trial, however, that the upper flat was supposed to be vacant at the time of the police search, and that Emmons was to have moved out of the upper flat long before that date. The trial court credited this testimony when concluding that Emmons was not entitled to be in the upper flat, and that her purported grant of permission to Harmon to be in the upper flat therefore was ineffective. No basis exists to question the trial court's credibility determination. See *People v Parker*, 230 Mich App 337, 341; 584 NW2d 336 (1998) (the trial court's resolution of a factual issue is entitled to deference, especially when the issue involves the credibility of witnesses). Accordingly, the trial court did not err in concluding that Harmon lacked standing to challenge the search or seizure with respect to the upper flat.

In addition, Harmon's challenge to the search and seizure fails because the officers had consent to enter the premises. One of the exceptions to the general requirement that a valid search must be conducted pursuant to a warrant is a search conducted pursuant to consent. *Brown*, 279 Mich App at 131. Generally, valid consent must come from either the person whose

property is being searched or from a third person who has common authority over the property. *Id*. In addition, a search may be rendered valid by virtue of consent by a third party without actual authority to consent if the police officers had an objectively reasonable belief that the person had authority to consent to the search. *Id*. Here, De Golish consented to the police search of the duplex, testifying that he managed and controlled the property on his mother's behalf. The record thus establishes that De Golish exercised common authority over the property and had authority to consent to the search. See *Brown*, 279 Mich App at 131.

Further, the trial court did not err in concluding that the police officers' entry into the upper unit of the duplex was independently supported by the existence of exigent circumstances. An exception to the Fourth Amendment warrant requirement exists where there are "exigent circumstances," one of which is when police officers are in "hot pursuit." *People v Henry (After Remand)*, 305 Mich App 127, 138; 854 NW2d 114 (2014). Under the hot pursuit exception, an officer may chase a fleeing suspect into a private home to prevent the suspect's escape, to prevent the destruction of evidence, and where there is risk of danger to the police or others. *Id*. In this case, the officers were in "hot pursuit" of Harmon and Dickerson when they entered the upper flat of the duplex. We note that when the officers entered the lower unit, Harmon and Dickerson were running from a table that contained illegal narcotics and firearms. The officers reasonably pursued the two men because they were fleeing suspects, and also because there was a possibility that defendants were armed and dangerous, or had additional evidence that would be destroyed. Accordingly, exigent circumstances existed that supported the police officers' entry into the upper unit of the duplex.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Dickerson contends that he was denied the effective assistance of counsel at trial because his trial counsel did not move before the trial court to suppress the evidence seized during the search. We disagree.

To establish a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). We note that effective assistance of counsel is presumed, and the defendant bears the burden of demonstrating that counsel was ineffective. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). When reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, we review the trial court's findings of fact for clear error, while reviewing the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

In this case, Dickerson contends that his trial counsel was ineffective for failing to file a pretrial suppression motion. Dickerson identifies no basis to conclude that such a motion would have succeeded, and we observe that Harmon's suppression motion concerning the same facts and incident was properly denied by the trial court. Also, Dickerson's counsel joined Harmon's renewed suppression motion at the close of the prosecution's proofs at trial, and that motion was likewise properly denied by the trial court. Dickerson's trial counsel was not ineffective for

failing to file a meritless motion. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Dickerson further argues that his trial counsel was ineffective for failing to call Emmons as a witness at trial. However, the decision to call or question a witness is a matter of trial strategy that we will not second guess with the benefit of hindsight. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). In addition, the failure to call witnesses only constitutes ineffective assistance of counsel when it deprives the defendant of a substantial defense, *id.*, being a defense that might have made a difference in the outcome of the trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Dickerson did not provide the trial court with an affidavit or other offer of proof to establish that Emmons would have testified in a manner that supported Dickerson's defense, and thus failed to establish that his trial counsel's failure to call Emmons might have made a difference in the outcome of the trial. We also deny Dickerson's request that this Court remand the case for a *Ginther* hearing because he has failed to establish entitlement to a remand by showing that development of a factual record is required for consideration by this Court, and has not adequately identified the facts to be established on remand. MCR 7.211(C)(1).

## C. CLERICAL ERROR IN SENTENCING

Harmon also contends that his judgment of sentence contains a clerical error concerning the length of his sentence for his conviction of felon in possession of a firearm, and that this clerical error should be corrected. We agree. MCR 6.435(A) provides that "[c]lerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party, and after notice if the court orders it." See also *People v Comer*, 500 Mich 278, 293; 901 NW2d 553 (2017). Here, the parties agree that Harmon's judgment of sentence contains a clerical error concerning the length of his sentence for felon in possession of a firearm. The trial court stated at sentencing that it was sentencing Harmon to 2 to 20 years' imprisonment for his felon in possession of a firearm conviction, and the order of conviction and sentence likewise states that Harmon's sentence for that conviction was 2 to 20 years' imprisonment, but the judgment of sentence erroneously lists the sentence for that conviction as 5 to 20 years' imprisonment. The case is therefore remanded to the trial court for the ministerial correction of Harmon's judgment of sentence to reflect that his sentence for felon in possession of a firearm is 2 to 20 years' imprisonment. The trial court shall provide a copy of the corrected judgment of sentence to the Department of Corrections.

Defendants' convictions are affirmed. Harmon's case is remanded to the trial court for the ministerial correction of the judgment of sentence consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Michael F. Gadola
/s/ Jonathan Tukel