*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CIYAN KYLA JONES,

Defendant-Appellant.

UNPUBLISHED
May 26, 2022

No. 356930
Tuscola Circuit Court
LC No. 20-015271-FH

Before: SAWYER, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the circuit court's order denying her motion to quash the bindover on the charges of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), possession of methamphetamine, MCL 333.7403(2)(b)(*i*), possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), possession of buprenorphine, MCL 333.7403(2)(b)(*ii*), possession of morphine, MCL 333.7403(2)(b)(*ii*), and possession of codeine, MCL 333.7403(2)(b)(*ii*). On appeal, defendant argues that the circuit court erred when it denied her motion to quash the bindover because the physical evidence relied upon by the prosecution should have been suppressed such that there was not probable cause to believe that defendant committed the charged offenses. We reverse and remand to the circuit court for entry of an order granting the motion to quash.

## I. FACTUAL BACKGROUND

On April 29, 2020, Sanilac County Deputy Sheriff Joshua Horst, who was part of the sheriff's office's Drug Task Force (DTF), was driving by an allegedly "known drug house," which was under surveillance by the DTF and other authorities. Deputy Horst testified that the sheriff's office had "received tips" and DTF had been surveilling the house because it was "known to be a drug house." Horst observed defendant exit the home and drive away in a silver vehicle. Horst

---

[1] *People v Jones*, unpublished order of the Court of Appeals, entered September 1, 2021 (Docket No. 356930).

was unaware how long defendant had been at the residence. He testified that his attention was drawn to the vehicle "[j]ust because it was at that residence." Deputy Horst followed defendant and contacted Michigan State Police Detective Sergeant Andrew Feehan of the Michigan State Police Narcotics Unit to inform him that defendant was seen exiting a known drug house and "[t]o see if [Feehan] wanted to conduct a traffic stop[.]" While following defendant, Deputy Horst conducted a license plate search and determined that defendant was driving an "out-of-town vehicle."[2] Detective Sergeant Feehan notified Michigan State Police Trooper Tyler Schuiteman of the information obtained by Deputy Horst, and Trooper Schuiteman located defendant's vehicle. Trooper Schuiteman observed defendant operating a vehicle with a cracked windshield while traveling in excess of the posted speed limit and initiated a traffic stop.

During the traffic stop, Trooper Schuiteman asked defendant about her previous location, her current destination, and whether she was in possession of any contraband. According to Trooper Schuiteman, defendant's body language indicated that she was not being truthful when responding to the questions. Trooper Schuiteman recalled that defendant was eating and drinking, evading questions, and changing conversation topics. Trooper Schuiteman asked defendant to exit her vehicle so he could "get clarification on her story" and for his safety because he did not know what was in the vehicle and he wanted to get a "better feeling on . . . [defendant's] body demeanor and facial expressions . . . ." Defendant complied. Trooper Schuiteman again asked defendant about contraband in the vehicle. He testified that defendant's demeanor became "very evasive." According to Trooper Schuiteman, "it was written all over [defendant's] face that she had something there that [she] did not want to tell me or did not want me to find." Trooper Schuiteman conducted a pat-down search of defendant's waistline in order to determine whether defendant was in possession of any weapons for his safety. The trooper also requested that defendant remove her shoes purportedly to check for weapons, for officer safety and defendant's safety once she was outside of her vehicle. She complied. Trooper Schuiteman did not find any weapons or contraband on defendant's person.

Rather than allowing the defendant to return to her vehicle (having found no weapons) and writing her tickets for the two civil infractions before concluding the stop, Trooper Schuiteman then informed defendant that a female officer would need to conduct a more thorough search of defendant's person. Trooper Schuiteman then determined that there were no female officers on duty at that time and informed defendant that he "would possibly have to take her down to the county jail where a female [officer] could search her . . . ." Then, according to Trooper Schuiteman, defendant became upset and "a little hostile." Schuiteman then handcuffed defendant with her hands behind her back, and placed her in the front passenger seat of his patrol vehicle. The Trooper acknowledged that defendant was not free to leave. Trooper Schuiteman then sat in the driver's seat of his patrol vehicle. During the entire duration of the traffic stop, Schuiteman repeatedly asked defendant if there was anything in her vehicle. Trooper Schuiteman stated on at least one occasion that "this is my last chance to help you." While defendant was inside of Schuiteman's patrol vehicle, he asked defendant, for a third time, if there was anything that he "need[ed] to know about before [he] search[ed]." Defendant eventually informed Trooper

---

[2] Horst testified that an "out-of-town vehicle" was a vehicle that was "not from the area."

Schuiteman that she used cocaine. Trooper Schuiteman then asked defendant if she had cocaine on her person or in her vehicle, and defendant said that she had a packet of cocaine in her pocket. Trooper Schuiteman reached into defendant's pocket and retrieved the packet of cocaine. At no time did Trooper Schuiteman provide defendant with *Miranda*[3] warnings prior to defendant making statements to Schuiteman. Trooper Schuiteman subsequently conducted a search of defendant's vehicle with another trooper, and they located a small lockbox in the passenger seat. Schuiteman removed the lockbox and placed it in his patrol car. The lockbox was put back into defendant's vehicle. However, Schuiteman could not recall who returned the lockbox to the vehicle.

Defendant was arrested. Her vehicle was seized and driven to a Michigan State Police post. Detective Sergeant Feehan obtained a search warrant for defendant's vehicle and its contents, and the search warrant was executed on April 30, 2020. The lockbox found in defendant's vehicle contained a daily planner with names, dates, and dollar amounts written inside, 9 grams of cocaine inside of a plastic bag, a "few grams of cocaine" in another container, a scale that was partially covered in white residue, a glass jar that contained methamphetamine residue, suboxone pills, morphine pills, codeine or acetaminophen pills, a "Chore Boy,"[4] razor blades, and additional plastic baggies.

Defendant was charged with possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), possession of methamphetamine, MCL 333.7403(2)(b)(*i*), possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), possession of buprenorphine, MCL 333.7403(2)(b)(*ii*), possession of morphine, MCL 333.7403(2)(b)(*ii*), and possession of codeine, MCL 333.7403(2)(b)(*ii*). Following a preliminary examination, defendant was bound over for trial on all counts. However, because defendant was not informed of her *Miranda* rights, the district court suppressed defendant's statements made while in the patrol vehicle. Nonetheless, the district court concluded that the physical evidence subsequently found would have been inevitably discovered, independent of defendant's statements, by lawful means. In circuit court, defendant filed a motion to quash the bindover in which she asserted that the physical evidence relied upon by the prosecution should have been suppressed. Ultimately, the circuit court issued an opinion and entered an order denying defendant's motion to quash the bindover. The circuit court also held that the district court did not abuse its discretion by concluding that the physical evidence was admissible, adopting the opinion of the district court with regard to the *Miranda* issue. This appeal followed.

## II. STANDARD OF REVIEW

To bind a criminal defendant over for trial in the circuit court, the district court must find probable cause to believe that the defendant committed a felony, which requires sufficient evidence of each element of the crime charged, or from which the elements may be inferred, to cause a person of ordinary prudence and

---

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[4] During the preliminary examination, Detective Sergeant Feehan testified that a "Chore Boy" was a device that is used to smoke crack cocaine.

caution to conscientiously entertain a reasonable belief of the defendant's guilt. [*People v Shami*, 501 Mich 243, 250-251; 912 NW2d 526 (2018) (cleaned up).]

"[T]his Court reviews de novo the bindover decision to determine whether the district court abused its discretion, giving no deference to the circuit court's decision." *People v Norwood*, 303 Mich App 466, 468; 843 NW2d 775 (2013) (quotation marks and citation omitted). "A district court abuses its discretion if its decision falls outside the range of principled outcomes." *Shami*, 501 Mich at 251 (quotation marks and citations omitted). "Insofar as the district court based its ruling on questions of law, however, its ruling is reviewed de novo." *Id*. "This Court therefore essentially sits in the same position as the circuit court when determining whether the district court abused its discretion." *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000). Questions of law, like whether the Fourth Amendment was violated and whether the exclusionary rule applies, are reviewed de novo. *People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005); *People v Woodard*, 321 Mich App 377, 382-383; 909 NW2d 299 (2017). However, a trial court's factual findings are reviewed for clear error. *People v Barbarich*, 291 Mich App 468, 471; 807 NW2d 56 (2011). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). The circuit court's ultimate ruling on the suppression of evidence is also reviewed de novo. *Id*.

### III. INITIATING AND EXTENDING THE TRAFFIC STOP

On appeal, defendant argues that Trooper Schuiteman did not possess reasonable suspicion of criminal activity that justified extending the traffic stop in order to question defendant about topics unrelated to the violation of traffic laws, and, as a result, the extended questioning by Trooper Schuiteman transformed the stop into a "mere pretextual one" in order to obtain evidence of an unrelated crime.[5] Although Trooper Schuiteman was justified in initiating the traffic stop, we agree that the extension of the stop was impermissible.

### A. PRETEXT

Defendant argues that the traffic stop, allegedly effectuated for a cracked windshield and a speeding violation, was transformed into an investigation for evidence of a separate suspected crime, wholly unrelated to the traffic stop, because Trooper Schuiteman exceeded the permissible scope during the stop. We agree.

"The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *Woodard*, 321 Mich App at 383 (quotation marks and citations omitted). "Generally, if evidence is unconstitutionally seized, it must be excluded from trial." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012). However, "[A] police officer may stop

---

[5] Defendant does not dispute that Trooper Schuiteman had the authority to conduct a traffic stop and issue defendant a traffic ticket as a result of speeding and a cracked windshield. Rather, defendant asserts that Trooper Schuiteman exceeded the permissible scope for the traffic stop.

and detain a motor vehicle on the basis of an articulable and reasonable suspicion that the vehicle or one of its occupants is violating the law, including a law regulating equipment." *Id*. "This Court's determination of whether there was reasonable suspicion to justify a stop must be made on a case-by-case basis, evaluated under the totality of the circumstances, and based on common sense." *Id*. "The subjective intent of the police officer is irrelevant to the validity of the stop." *Id*. at 509.

During the preliminary examination, Trooper Schuiteman testified that he observed defendant operating a vehicle with a cracked windshield while traveling in excess of the posted speed limit. A police officer may stop a motor vehicle in order to issue the driver a civil infraction citation for defective equipment. MCL 257.683(2); see *Dillon*, 296 Mich App at 508. Speeding is also a traffic violation. MCL 257.627(16). Therefore, Trooper Schuiteman had an articulable and reasonable suspicion that defendant was violating the law. Accordingly, the initial traffic stop was justified regardless of Trooper Schuiteman's subjective intent.

## B. EXTENSION OF THE TRAFFIC STOP

Although Trooper Schuiteman was justified in initiating the traffic stop, we conclude that the district court and circuit court erred by concluding that Trooper Schuiteman possessed reasonable suspicion of criminal activity to extend the traffic stop.

"A traffic stop is reasonable as long as the driver is detained only for the purpose of allowing an officer to ask reasonable questions concerning the violation of law and its context for a reasonable period." *People v Williams*, 472 Mich 308, 315; 696 NW2d 636 (2005). "It is no violation of the Fourth Amendment for an officer to ask reasonable questions in order to obtain additional information about the underlying offense and the circumstances leading to its commission." *Id*. at 316. "[A]lthough police officers 'may conduct certain unrelated checks during an otherwise lawful traffic stop,' they 'may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.' " *People v Kavanaugh*, 320 Mich App 293, 300-301; 907 NW2d 845 (2017), quoting *Rodriguez v United States*, 575 US 348, 355; 135 S Ct 1609; 191 L Ed 2d 492 (2015).

> "A police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." [*Rodriguez*, 575 US at 355]. Once the constitutionally sound basis for the traffic stop has been addressed, any further extension of the detention in order to conduct "on-scene investigation into other crimes" or for any other reason is a Fourth Amendment violation unless new facts come to light during the traffic stop that give rise to reasonable suspicion of criminal activity." *Id*. at [356]. [*Kavanaugh*, 320 Mich App at 301 (alterations and citation omitted).]

Therefore, the continued detention of an individual and his or her vehicle "after the traffic stop's conclusion [is] unconstitutional unless the traffic stop revealed a new set of circumstances that led to a reasonably articulable suspicion that criminal activity was afoot." *Id*. at 301 (quotation marks, citations, and alterations omitted).

"Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances." *Id*. (quotation marks and citation omitted). "A determination regarding whether a reasonable suspicion exists must be based on commonsense judgments and inferences about human behavior," and "[t]hat suspicion must be reasonable and articulable." *Id*. at 301-302 (quotation marks and citation omitted). "In determining whether a police officer acted reasonably, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id*. at 302 (quotation marks, citation, and alternations omitted). However, "[a] person's propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person" or to reasonable suspicion that the individual was engaged in criminal activity. *People v Coscarelli*, 196 Mich App 724, 726-727; 493 NW2d 525 (1992). Similarly, an individual's presence in a high crime area or an area of expected criminal activity, standing alone, does not establish reasonable suspicion. *People v Nelson*, 443 Mich 626, 636; 505 NW2d 266 (1993); *Illinois v Wardlow*, 528 US 119, 124; 120 S Ct 673; 145 L Ed 2d 570 (2000).

Plaintiff argues that, during the traffic stop, Trooper Schuiteman possessed reasonable suspicion to believe there was criminal activity afoot on the basis of his many years of experience, the information relayed to him regarding the underlying narcotics investigation, the suspicious behavior exhibited by defendant during the traffic stop, and the fact that defendant had left an allegedly known drug house that was under investigation just before the stop. Remarkably, the behavior the trooper deemed 'suspicious' was defendant eating and drinking during the stop, changing topics on what the trooper wanted to talk about, and the defendant getting upset after the trooper required her to remove her shoes roadside after which he handcuffed defendant and placed her in the trooper's patrol vehicle. We disagree that this conduct was indicative of criminal conduct.

The record indicates that defendant's vehicle was seen leaving an alleged drug house where authorities had been conducting surveillance and an investigation. Trooper Schuiteman effectuated a traffic stop because defendant was driving the vehicle in excess of the speed limit and the vehicle had a cracked windshield. During the traffic stop, Trooper Schuiteman asked defendant for identification, paperwork for the vehicle, her previous location, her current destination, and whether she was in possession of any contraband. According to Trooper Schuiteman, defendant's body language indicated that she was not being truthful when responding to the questions. Trooper Schuiteman testified that defendant was "acting evasive" by eating and drinking during the stop, evading questions, and changing conversation topics. However, Trooper Schuiteman also testified that defendant "somewhat answered" his questions. After Trooper Schuiteman spoke with defendant at her vehicle, he returned to his patrol vehicle to "run" her information.[6] Trooper Schuiteman returned to defendant's vehicle and asked defendant to exit her vehicle so he could "get clarification on her story" and for his safety because he did not know what

---

[6] We note that Trooper Schuiteman's testimony did not indicate any irregularities with the vehicle information provided by defendant. In fact, Trooper Schuiteman acknowledged having pulled defendant over for speeding several weeks prior to the incident at hand.

was in the vehicle and he wanted to get a "better feeling on . . . [defendant's] body demeanor and facial expressions . . . ." Defendant complied.

While defendant stood outside of her vehicle, Trooper Schuiteman again asked defendant whether there was anything in her vehicle or on her. Schuiteman also told her "now was the time to let me know cause [sic] I can work with her . . . I have the resources working with [the Thumb Narcotics Unit] in the past and other drug teams where they can kinda [sic] work with them to help themselves out, per se, down the road . . . ." Schuiteman testified that defendant's demeanor became "very evasive." According to Trooper Schuiteman, "it was written all over [defendant's] face that she had something there that [she] did not want to tell [him] or did not want [him] to find." Next, Trooper Schuiteman conducted a pat-down search of defendant for weapons, which did not reveal any contraband or weapons. Subsequently, Trooper Schuiteman requested a female officer come to the scene to conduct a "proper search" of defendant. However, no female officers were available. Schuiteman testified that he wanted to have defendant searched on the basis of the information from the DTF, the fact that defendant recently left the suspected drug house, and defendant's body language because he observed "red flags of something else was [sic] going on . . . ." Trooper Schuiteman then informed defendant that he would possibly have to take her to the county jail, where a female officer could search her, and he also asked defendant if there was anything that she needed to tell him. According to Schuiteman, defendant became "a little upset" and "hostile" after his question. Schuiteman then handcuffed defendant and placed her in his patrol vehicle.

"A police officer's reasonable suspicion may be based on information obtained from another." *People v Chambers*, 195 Mich App 118, 122; 489 NW2d 168 (1992). However, to justify the extension of the detention past the completion of the initial traffic stop, "the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." See *Terry v Ohio*, 392 US 1, 21; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Although the authorities may have received tips or information regarding drug activity that may have occurred at the house that defendant was seen leaving, nothing in the record indicates that these "drug-house" tips were specific, particular, or related to defendant.

The facts of the instant case are analogous to *Coscarelli*, 196 Mich App at 724. In *Coscarelli*, undercover narcotic officers were observing a house, waiting for a search warrant, and were instructed to stop any vehicle that came to or left the house before the search warrant was executed. *Id*. at 725-726. Officers saw the defendant approach the house in a vehicle, enter the house, and leave after approximately seven minutes. *Id*. The officers conducted an investigative stop and search of the defendant, and defendant was found to be in possession of cocaine. *Id*. at 726. The officers testified that their reasonable suspicion to effectuate the stop was based on the fact that the police had conducted a controlled narcotic purchase approximately a few hours before the defendant was seen arriving and leaving the house. *Id*. at 727. This Court held that the officers did not possess "sufficient reasonable, particularized, and articulable suspicion that this particular defendant was engaged in criminal activity." *Id*. at 727. We explained:

> Defendant's subsequent presence at the location of the earlier controlled narcotics purchase provides no particular basis for suspicion concerning his participation in criminal activity. As noted by defendant, he could have been at the house for any number of reasons. *His presence is not sufficient in and of itself to give rise to a*

*particularized suspicion of criminal activity*. It cannot be said that every person entering or leaving this house is likely to have been engaged in the purchase of narcotics. The degree of suspicion attached to this conduct is insufficient to serve as the sole ground for a stop and seizure. *Although such conduct might contribute to a finding of reasonable suspicion if viewed along with other suspicious acts, the act of staying at the house for only a short time does not provide that needed support*. Because the officers could only speculate about what defendant was doing at the house, they lacked the requisite particularized suspicion, based on objective observations, necessary to justify their investigative stop. [*Id*. at 727-728 (citations omitted; emphasis added).]

Similar to *Coscarelli*, defendant's mere presence at a location where drug activity was suspected "provides no particular basis for suspicion concerning [her] participation in criminal activity." *Id*. 727-728. Accordingly, Trooper Schuiteman could not have possessed a reasonable suspicion that defendant was engaged in criminal activity on this basis.

The "evasive behavior" identified by Trooper Schuiteman—that defendant was eating and drinking during the stop, evading questions, and changing conversation topics—also did not provide a basis for reasonable suspicion. This Court has recognized that "many courts have given little weight to considerations of nervousness during a traffic stop." *Kavanaugh*, 320 Mich App at 304. Plaintiff has provided no caselaw to support that eating and drinking are evasive or "strange" behaviors, and Trooper Schuiteman did not explain how or why, based on his experience or knowledge, eating and drinking in a vehicle during a traffic stop provided grounds to suspect defendant of criminal activity. See *id*. at 305. Further, although Trooper Schuiteman testified that defendant evaded his questions and changed conversation topics, he also testified that defendant "somewhat answered" his questions. Importantly, Trooper Schuiteman did not articulate what specific questions defendant evaded, the answers that defendant provided, or why the exchange indicated any likelihood of criminal activity. See i*d*.

"It is not enough that an officer have an 'inchoate and unparticularized suspicion or "hunch." ' " *Kavanaugh*, 320 Mich App at 306, quoting *Terry*, 392 US at 27. An officer "must be able to articulate the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id*. at 307 (quotation marks and citation omitted). Here, Trooper Schuiteman has recounted some aspects of the stop that he may have found unusual or "strange." However, on the basis of the record, aside from the apparently unrelated suspected criminal activity of the alleged drug house, Trooper Schuiteman was never able to articulate any specific facts or rational inferences of possible criminal activity particular to defendant that justified the extension of the traffic stop.

Accordingly, we cannot conclude that the circumstances cited by Trooper Schuiteman supported a finding of reasonable suspicion. As a result, defendant's prolonged detention after Schuiteman completed the traffic stop was impermissible because he did not possess reasonable suspicion of criminal activity that justified extending the traffic stop in order to question defendant about topics unrelated to defendant's traffic violations. Therefore, the continued detention of defendant and her vehicle after the traffic stop's conclusion was in violation of the Fourth Amendment. *Kavanaugh*, 320 Mich App at 301.

## IV. PAT-DOWN SEARCH

We also conclude that the trial court erred when it determined that Trooper Schuiteman was justified in conducting a pat-down search for weapons on defendant's person.

"An officer who makes a valid investigatory stop may perform a limited pat[-]down search for weapons if the officer has reasonable suspicion that the individual stopped for questioning is armed and thus poses a danger to the officer." *People v Champion*, 452 Mich 92, 99; 549 NW2d 849 (1996). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *People v Custer*, 465 Mich 319, 328; 630 NW2d 870 (2001) (quotation marks and citation omitted).

In the instant case, Trooper Schuiteman testified that he asked defendant to step out of her vehicle to clarify her story and for his safety. Trooper Schuiteman again asked defendant whether there was anything in her vehicle or on her. Schuiteman also told her "now was the time to let me know cause [sic] I can work with her . . . I have the resources working with [the Thumb Narcotics Unit] in the past and other drug teams where they can kinda [sic] work with them to help themselves out, per se, down the road . . . ." Trooper Schuiteman requested that defendant remove her shoes, roadside, to check for weapons. Then, he testified, defendant's demeanor "again became very evasive," and he conducted a pat-down search, which did not reveal any contraband or weapons. He explained that he conducted a pat-down search for weapons, for his safety, and defendant's safety. Schuiteman also testified that he wanted to have defendant searched on the basis of the information from the DTF, the fact that defendant recently left the suspected drug house, and defendant's body language because he observed "red flags of something else was [sic] going on . . . ." Subsequently, Trooper Schuiteman requested that a female officer come to the scene to conduct a "proper search" of defendant.

As already observed, Trooper Schuiteman did not possess reasonable suspicion to believe criminal activity was afoot. Similarly, Schuiteman's testimony did not provide any articulable reason to support a finding that this particular defendant was potentially armed or dangerous. The record is void of any facts that support such a conclusion. Therefore, there was no justification for Trooper Schuiteman to conduct a pat-down search of defendant and such an extension of the detention was also in violation of the Fourth Amendment.[7] See *Kavanaugh*, 320 Mich App at 301.

---

[7] We note that, after the initial pat-down search, Trooper Schuiteman intended to transport defendant to a county jail where she could be searched a second time by a female officer. However, "[T]ransportation to and investigative detention at [a] station house without probable cause or judicial authorization together violate the Fourth Amendment." *Hayes v Florida*, 470 US 811, 815; 105 S Ct 1643; 84 L Ed 2d 705 (1985). Nonetheless, had there been reasonable suspicion to justify a pat-down search of defendant in the first instance, any subsequent pat-down search of defendant would have been unjustified because the first search did not provide any additional circumstances to support a basis for continued detention, see *Kavanaugh*, 320 Mich App at 301, or probable cause for an arrest, see *People v Nguyen*, 305 Mich App 740, 751-752; 854 NW2d 223

In conclusion, Trooper Schuiteman did not possess reasonable suspicion that defendant was armed and posed a danger to him or to others. Therefore, there was no basis to conduct a pat-down search or to continue detaining defendant. Because we conclude that there were no additional circumstances warranting the continued detention of defendant, we need not address appellant's arguments regarding excessive force.

## V. EXCLUSIONARY RULE AND INEVITABLE DISCOVERY

Generally, "searches or seizures conducted without a warrant are unreasonable per se, and when evidence has been seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial." *Woodard*, 321 Mich App at 383 (quotation marks and citation omitted). Additionally, "[a] court is required to suppress evidence otherwise lawfully seized during a traffic stop only if the officer did not have reasonable suspicion to justify the stop." *Dillon*, 296 Mich App at 509. However, not every violation of the Fourth Amendment warrants suppression. See *People v Frazier*, 478 Mich 231, 250; 733 NW2d 713 (2007); *People v Goldston*, 470 Mich 523, 525-526; 682 NW2d 479 (2004). Rather, exclusion is only appropriate when the government engaged in misconduct. *Frazier*, 478 Mich at 250.

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force. [*Id*. (quotation marks and citation omitted).]

"The primary benefit of the exclusionary rule is that it deters official misconduct by removing incentives to engage in unreasonable searches and seizures." *Goldston*, 470 Mich at 529.

One exception to the exclusionary rule is the "inevitable discovery exception." *People v Stevens (After Remand)*, 460 Mich 626, 637; 597 NW2d 53 (1999). On appeal, defendant argues that the lower courts erred by concluding that the physical evidence found on defendant's person and in her vehicle would have been inevitably discovery. We agree.

"The inevitable discovery doctrine is recognized in Michigan and may justify the admission of otherwise tainted evidence that ultimately would have been obtained in a constitutionally accepted manner." *People v Mahdi*, 317 Mich App 446, 469; 894 NW2d 732 (2016) (quotation marks and citation omitted). "The inevitable-discovery rule permits the admission of evidence obtained in violation of the Fourth Amendment if the prosecution establishes by a preponderance of the evidence that the information inevitably would have been

---

(2014) (Probable cause to arrest exists when the circumstances "at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony.") (quotation marks and citation omitted).

discovered through lawful means." *Id*. To determine whether the inevitable-discovery rule applies, this Court has considered the following factors:

> (1) whether the legal means were truly independent, (2) whether the use of the legal means and the discovery by the legal means were truly inevitable, and (3) whether application of the inevitable-discovery doctrine could incentivize police misconduct or significantly weaken the protection provided under the Fourth Amendment. [*Id*.]

In the instant case, the district court and circuit court concluded that the exclusionary rule did not bar the admission of the physical evidence because the evidence would have inevitably been discovered by lawful means. However, there is no indication that the officer would have inevitably discovered the evidence through legal means.

The district court first concluded that the evidence found on defendant's person would have been found as a result of a pat-down search or search incident to arrest. We disagree.

Trooper Schuiteman did conduct a pat-down search. However, the search did not reveal any additional evidence. As discussed, the pat-down search was not justified. Further, there is no indication that a subsequent pat-down search would have been justified or that the packet of cocaine in defendant's pocket would have been found as the result of an additional pat-down search. Thus, the discovery of the packet of cocaine in defendant's pocket by way of a lawful pat-down search was not truly inevitable. Additionally, the packet of cocaine found in defendant's pocket would not have been discovered as the result of lawful search incident to a warrantless arrest. "Generally, a search conducted without a warrant is unreasonable unless it was conducted pursuant to an established exception to the warrant requirement." *People v Nguyen*, 305 Mich App 740, 756; 854 NW2d 223 (2014). "A search incident to an arrest is an exception to the warrant requirement, and may occur whenever there is probable cause to arrest." *Id*. Probable cause to arrest exists when the circumstances "at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony." *Id*. at 751-752 (quotation marks and citation omitted). As discussed, there was no reasonable suspicion to suspect that defendant was engaged in criminal activity. Absent the statements defendant made in violation of her *Miranda* rights and during the prolonged unlawful seizure, Trooper Schuiteman would not have had probable cause to arrest defendant. Given that Trooper Schuiteman did not have probable cause to arrest defendant, he would not have been justified in conducting a search incident to a lawful arrest. Therefore, the discovery of the packet of cocaine in defendant's pocket by way of a search incident to a lawful arrest was not truly inevitable.

The district court also opined that the evidence found in defendant's vehicle would have been found as a result of a search warrant or the "automobile exception." However, again, there was no probable cause to obtain a search warrant or search defendant's vehicle on the basis of the automobile exception. "Under the automobile exception, the police may search a motor vehicle without the necessity of first obtaining a warrant if probable cause to support the search exists." *People v Moorman*, 331 Mich App 481, 486; 952 NW2d 597 (2020) (quotation marks, citation, and alteration omitted). Probable cause exists when "there is a substantial basis for inferring a fair probability that contraband or evidence of a crime will be found in a particular place" *People v Kazmierczak*, 461 Mich 411, 417-418; 605 NW2d 667 (2000) (quotation marks and citation

-11-

omitted). Probable cause is also required to issue a search warrant. See *Id*. Absent the statements defendant made in violation of her *Miranda* rights or the packet of cocaine found in defendant's pocket, Trooper Schuiteman lacked probable cause to search defendant's vehicle. Additionally, there is no evidence that the police were in the process of obtaining a search warrant at the time of the traffic stop. See *Mahdi*, 317 Mich App at 470. Therefore, the discovery of the contraband in defendant's vehicle was not truly inevitable.

The evidence found as a result of the prolonged detention of defendant flowed from the continued unlawful seizure of the vehicle and defendant. Accordingly, all evidence obtained as a result of the illegal seizure should have been suppressed because the plaintiff failed to establish by a preponderance of the evidence that "the information inevitably would have been discovered through lawful means." See *Moorman*, 331 Mich App at 485 ("Generally, evidence that is obtained in violation of the Fourth Amendment is inadmissible as substantive evidence in criminal proceedings.") (quotation marks and citation omitted); *Mahdi*, 317 Mich App at 470-471. Because the only evidence that supports the charges is evidence that was obtained following the unconstitutional prolonged stop, we conclude that the circuit court abused its discretion by denying defendant's motion to quash the bind over.

## VI.  THE *MIRANDA* DOCTRINE

Plaintiff asserts that defendant was not in custody for purposes of *Miranda* when defendant was handcuffed, placed into the officer's patrol vehicle, questioned, and made statements to Trooper Schuiteman. Therefore, plaintiff argues that defendant's statements, which plaintiff describes as voluntary, uncoerced, and noncustodial statements, made in the patrol vehicle were admissible and that the circuit court erred by suppressing the statements. We disagree.

"The ultimate question whether a person was in custody for purposes of *Miranda* warnings is a mixed question of fact and law, which must be answered independently by the reviewing court after review de novo of the record." *People v Barritt*, 325 Mich App 556, 561; 926 NW2d 811 (2018) (quotation marks and citation omitted). "This Court reviews for clear error the trial court's factual findings concerning the circumstances surrounding statements to the police." *Id*.

### A.  CUSTODIAL INTERROGATION

"Every person has a constitutional right against self-incrimination." *Barritt*, 325 Mich App at 561, citing US Const, Am V; Const 1963, art 1, § 17. "To effectuate this right, the police must warn a defendant of his or her constitutional rights if the defendant is taken into custody for interrogation." *Barritt*, 325 Mich App at 561. Whether a person is "in custody" for Fifth Amendment purposes depends on whether, under the totality of the circumstances, a reasonable person would not believe he or she was at liberty to terminate the interrogation and leave. *Id*. at 562. In determining whether a person is in custody, multiple factors should be considered, although no individual factor is controlling. *Id*. at 563. These factors include the location of the questioning, the duration of the questioning, the statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning. *Id*. at 562-563.

In the instant case, defendant, while handcuffed with her hands behind her back, was questioned by Trooper Schuiteman in the front seat of Trooper Schuiteman's patrol vehicle. The duration of the questioning appeared to be brief given that Trooper Schuiteman asked defendant whether there was anything in her vehicle that he needed to know about. Defendant responded that she used cocaine and had a packet of cocaine in her pocket. Nevertheless, Trooper Schuiteman did not inform defendant that she was free to leave, and defendant's hands were handcuffed behind her back during the questioning. Lastly, defendant was not released at the end of the questioning. In light of these circumstances, we are not left with a definite and firm conviction that a mistake has been made relative to the trial court's factual findings that defendant was subject to custodial interrogation once she was handcuffed and placed in Trooper Schuiteman's vehicle.

## B. WAIVER

"Statements made by a defendant to the police during a custodial interrogation are not admissible unless the defendant voluntarily, knowingly, and intelligently waives the constitutional right against self-incrimination." *Barritt*, 325 Mich App at 561-562. A defendant may waive the right against self-incrimination if the waiver meets two criteria:

> First, the relinquishment of the right must have been voluntary, in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. [*People v Tanner*, 496 Mich 199, 209; 853 NW2d 653 (2014) (quotation marks and citation omitted).]

"[T]he prosecution has the burden of establishing a valid waiver by a preponderance of the evidence." *People v Daoud*, 462 Mich 621, 634; 614 NW2d 152 (2000).

In the instant case, the totality of the circumstances does not reveal that defendant waived her right against self-incrimination with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. During the preliminary examination, Trooper Schuiteman testified that he did not inform defendant of her *Miranda* rights before questioning defendant in the front seat of his patrol vehicle. Therefore, there was no evidence that defendant was aware of the nature of her right against self-incrimination or the consequences of a decision to abandon it. Therefore, the trial court did not err by holding that the statements defendant made to Trooper Schuiteman in Trooper Schuiteman's patrol vehicle were not admissible. See *Barritt*, 325 Mich App at 561-562.

This Court has held that "[p]hysical evidence obtained as a result of an unwarned statement remains admissible as long as the statement was voluntary." *People v Campbell*, 329 Mich App 185, 204-205; 942 NW2d 51 (2019). However, as explained earlier, because the physical evidence was obtained as a result the unlawful prolonged stop in violation of defendant's Fourth Amendment rights, all evidence from the unlawful seizure must be excluded. See *Moorman*, 331 Mich App at 485.

## VII. CONCLUSION

Any evidence that flowed from the unconstitutional prolonged stop is inadmissible as substantive evidence at trial. *Id.* The trial court did not err by holding that the defendant's unwarned statements were not admissible. See *Barritt*, 325 Mich App at 561-562. Because the only evidence that supports the charges is evidence that was obtained following the unconstitutional prolonged stop, we conclude that the circuit court abused its discretion by denying defendant's motion to quash the bind over.

We reverse the circuit court's order denying defendant's motion and remand to the circuit court for entry of an order granting the motion to quash. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Michelle M. Rick